MCCRARY *v.* STATE OF INDIANA.

[No. 30,065. Filed April 3, 1961.]

*John Clifford McCrary, pro se.*

*Edwin. K. Steers,* Attorney General, and *Stanley B. Miller,* Deputy Attorney General, for appellee.

BOBBITT, C. J.—On April 8, 1959, appellant herein filed, *pro se,* in this court certain papers purporting to be "An Appeal From the Putnam Circuit Court in the Dismissal of Amended Petition for Writ of Error Coram Nobis" (in forma pauperis), which purported appeal was dismissed by a per curiam opinion of this

court on May 14, 1959,[1] for failure to file an assignment of errors as provided by Rule 2-6 of this court, 1958 Edition, and also for failure to initiate the appeal and file a transcript as provided by Rules 2-3 and 2-5 of this court, 1958 Edition.

On May 29, 1959, appellant filed his petition for rehearing asserting, *inter alia,* "that he is not familiar with the rules and regulations of the Indiana Supreme Court, and due to the fact that he is a pauper person without means of employing counsel, he has no opportunity to comply with above said rules and regulations. He also contends, that because of his pauper status, it was the duty of the lower Court to appoint him Counsel in order that he might perfect and [an] appeal of his cause."

This petition was denied, without opinion, on September 18, 1959.

Subsequently appellant filed a petition for certiorari in the Supreme Court of the United States wherein he alleged, *inter alia,* that the dismissal of his attempted appeal here denied him the equal protection of the laws because he was unable to pay for the preparation and securing of a proper transcript of the record of the trial court to present here on appeal and, further, that he attempted to avail himself of the services of the Indiana Public Defender who is empowered to secure a transcript in proper cases, at public expense, and that the Public Defender declined to assist him or to secure such transcript or to assist him in perfecting his appeal.

In granting certiorari the opinion of the Supreme Court of the United States, 364 U. S. 277, 80 S. Ct. 1410, 1411, 4 L. Ed. 2d 1706, stated, "The record before us does not disclose whether these allegations were

---

1. *State ex rel. McCrary* v. *State* (1959), 239 Ind. 707, 158 N. E. 2d 292.

made to, and passed on by, the Indiana Supreme Court in light of *Griffin* v. *Illinois, supra* [(1956), 351 U. S. 12, 100 L. Ed. 891, 76 S. Ct. 585, 55 A. L. R. 2d 1055]." Our order of dismissal was vacated and the case remanded here for further consideration of the appeal.

In our judgment *Griffin* v. *Illinois, supra,* is not applicable here and does not control our action in the present case for the following reasons:

At the time Griffin and Crenshaw were convicted on a charge of armed robbery the State of Illinois provided for the payment of the costs of an appeal for a poor person unable to prosecute his writ of error, *only and solely* from a conviction of a capital offense where the sentence was death.[2]

The Illinois Post-Conviction Hearing Act[3] provides that "[a]ny person imprisoned in the penitentiary" may institute a proceeding to show that his rights under the Constitution of the United States or of the State of Illinois were substantially denied, in the proceeding which resulted in his conviction and if he is unable to pay the cost of such proceeding, the court may order that he be permitted to proceed as a poor person.

Griffin and Crenshaw were denied the right to appeal as a poor person from their conviction of armed robbery under the first statute because its provisions were limited to persons convicted of a capital offense, the penalty for which is death; and were denied the right to proceed as a poor person under the provisions of the Post-Conviction Act solely on the grounds that the charges contained in their petition raised no substantial State or Federal constitutional questions.

2. Laws 1927, §1½, p. 400; Ill. Rev. Stat. (1955), ch. 38, §769a.
3. Laws 1949, §1, and §4, p. 722; Ill. Rev. Stat. (1955), ch. 38, §826 and §829.

As we analyze the opinion by Justice Black it appears that the decision of the Supreme Court of Illinois was reversed because both Illinois statutes violated the due process and equal protection clauses of the Constitution of the United States (U. S. Const. Amend. 14) in that they discriminated between "poor persons" by requiring the county to pay the costs of an appeal for those who were convicted of capital crimes, the sentences for which were death, but failed to provide like facilities for persons of the same economic status who were convicted of lesser crimes, and by providing for a post-conviction remedy under which only constitutional questions could be raised.

The remedies of appeal for poor persons in Indiana are not inflicted with such discriminatory provisions. In this State both the right of appeal from the conviction in any criminal case and from a judgment in any post-conviction proceeding are available to all persons who are unable to pay the cost of their appeal upon the same terms and conditions.

Appellant's proceeding herein has been considered under the same rules and regulations as are applied to every similar case arising in this State. He has been accorded his full rights of due process.

There is no distinction between offenses or issues in the statutes of Indiana or in the rules of procedure of this court as they pertain to pauper appeals, either from a judgment of conviction in criminal cases or from a judgment in a post-conviction proceeding.

Upon receipt of the mandate from the Supreme Court of the United States, and being without information concerning whether the Public Defender had refused to represent appellant as alleged in his petition for certiorari, we ordered him (the Public Defender) to

show cause "why he declined, if he did decline or refuse, to provide a transcript for appellant [McCrary] or to assist him in the preparation of an appeal from the dismissal" of his coram nobis proceeding in the Putnam Circuit Court.

In compliance with such order the Public Defender has timely filed his verified answer and return wherein it is stated that appellant-McCrary did request his services, whereupon he personally interviewed appellant at the Indiana State Prison on July 19, 1956. That thereafter he made a complete and thorough investigation of the case and found the following:

That prior to October 6, 1955, appellant lived near Fincastle, Indiana, with his wife and their three children, ages 16, 15 and 12, respectively; that they had been married for more than 16 years and the wife was employed as a practical nurse in and around Greencastle and Indianapolis, Indiana, and had been employed in a sanitarium in Indianapolis for about a month prior to October 6, 1955; and that she commuted between their home in Fincastle and her work in Indianapolis, using her own automobile.

Appellant also was employed in Indianapolis, and drove his own automobile to and from work, or shared rides with others at various times. Appellant suspected his wife of meeting another man and when he accused her of this she admitted that it was true. Although promising to stop seeing the other man she kept taunting her husband about him. In his confession appellant stated that he believed "she had made good her promise to quit seeing" the other man.

On October 6, 1955, appellant became ill at work and left for home arriving there a little after noon. His wife, who was then at home, and he engaged in an argument about their marital affairs and she told him that

she was going to "pack her clothes and move out."
Appellant, in his signed confession, a copy of which is
made a part of the Public Defender's return, said:

> "After she said that I walked into the bedroom
> and picked up my Stevens 22 Rifle which was set-
> ting in the closet. I pulled back the safety and saw
> that it was loaded. It was then that I decided to
> kill Ruth. I called to her 'Hey Ruth.' She came to
> the bedroom door and I pointed the gun at her.
> She saw the gun and said 'Oh Cliff' and started
> toward me holding her hands out to me. That was
> when I shot her. I didn't know how many times I
> shot her till she fell to the floor. I shot her twice
> in the left breast while she was laying there kick-
> ing and twisting on the floor. She didn't say any-
> thing after I had fired the first shot. I don't know
> whether I hit her every time I shot or not. She
> lay quiet after I shot her the last two times while
> she was on the floor."

Appellant-McCrary, after writing notes to his chil-
dren, called the telephone operator and asked her to
call the sheriff and tell him that he had killed his wife.
He then waited on the front porch until a deputy sher-
iff arrived at which time he told him what had hap-
pened. The deputy sheriff then went into the house
and after observing what had happened placed appel-
lant under arrest and took him to the county jail. At
the jail appellant was asked if he wanted to make a
statement and later was taken to the office of the prose-
cuting attorney of Putnam County. He was advised at
that time that he was entitled to have a lawyer, and in
reply to this advice by the prosecuting attorney, appel-
lant said, "What good could any lawyer do me now."
He then made the complete written confession in which
he stated, "I have not been mistreated by anybody in
any way since the deputy sheriff took me in custody.
Everyone has been nice to me and I am happy to co-

operate with these officers and tell them all about what happened to Ruth."

On October 12, 1955, an indictment was returned by the Grand Jury of Putnam County charging appellant with murder in the first degree. The Putnam Circuit Court, upon appellant's request, appointed James G. Hughes, a competent and reputable attorney of the Putnam County Bar, as his attorney. The cause was submitted to a jury on a plea of not guilty, resulting in a verdict of guilty of murder in the second degree, and appellant was thereupon sentenced to the Indiana State Prison for life.

The Public Defender in his return further states that from his investigation he found that the confession made by appellant on October 6, 1955, was freely and voluntarily made within a few hours after his arrest. Appellant's counsel at the trial, also was of the opinion that appellant's confession, which was introduced in evidence by the State at the trial, was not made under duress or coercion of any kind, and that any objections made to its introduction would have been without merit and purely frivolous. From his investigation he concluded that the only possible defense which might be interposed for appellant was that of insanity, temporary or otherwise. However, appellant refused to allow his trial counsel to interpose such defense.

The return further states that appellant testified in his own defense that the matters set forth in his confession were substantially correct, except that part of it which described the actual cicumstances of the killing. He did not attempt to repudiate any other parts of his confession, including his statement that he called the telephone operator to summons the sheriff.

Appellant's trial counsel, in an affidavit attached to the Public Defender's return and marked Exhibit "B,"

states, *inter alia,* that a brother of defendant (appellant) who rendered him valuable help and assistance at the time of the trial, thanked him at the conclusion of the trial for what "he attempted to accomplish and said that all had been done that could have been done." Such affidavit further states that the prosecuting attorney gave the defendant-appellant every possible right to which he was entitled and that in his (defense counsel) opinion "the defendant John C. McCrary had a fair and impartial trial in the Putnam Circuit Court."

That following his investigation and based upon the foregoing facts and circumstances, the Public Defender informed appellant-McCrary that he was unable to find any cause for any post-conviction proceedings and was, therefore, closing his file on the case.

After appellant-McCrary had filed, *pro se,* his petition for writ of error coram nobis in the Putnam Circuit Court and which was dismissed on motion of the State, the Public Defender of Indiana made an investigation of the charges contained in appellant's petition for the writ and reports to this court that an investigation of the facts and the charges made in the petition for writ of error coram nobis are without foundation and merit and he, therefore, refused to perfect an appeal for appellant from the dismissal of his second amended petition for writ of error coram nobis.

This appellant, as stated by the Public Defender in his return, charges (1) that his original arrest was without a warrant; (2) that he was not taken before a committing magistrate after his arrest as provided by statute; (3) that he was denied the right to counsel of his own choice; (4) that he was denied the right to counsel immediately after his arrest; (5) that he was coerced into signing a statement or confession; (6) that he was never served with a warrant; (7) (8) (9)

that his trial counsel was incompetent; (10) (11) (12) that he was denied a fair and impartial trial and that he was denied "Due course of law," "Due Process of law," and "Equal protection of the law."

The facts and circumstances as shown by the record now before us show each and all of these allegations to be wholly without merit, and we deem it unnecessary to cite authorities or express the reasons for our conclusion. The circumstances here are such as to fully justify the Public Defender in refusing to use his office in the prosecution of an appeal without merit and without justifiable reason for believing that it might be successful.

The return of the Public Defender is supported by copies of appellant's written confession and affidavit of his trial counsel, both of which are before us as Exhibits "A" and "B" respectively to such return.

We concur in the findings of the Public Defender and affirm his action in declining to represent appellant-McCrary in the present case.

This case is not one where a pauper defendant requested the trial court to furnish him counsel and a transcript of the record for the purpose of an appeal from a judgment of conviction to which he is entitled as a matter of right,[4] but rather is an attempt by appellant here to require the State to furnish him a transcript of the proceedings in the post-conviction remedy of coram nobis, for the purpose of appealing an adverse judgment therein without regard to the merits of his cause.

"[T]he right of appeal may be accorded by the state to the accused upon such terms as in its wisdom may

___

4. Acts 1905, ch. 169, §324, p. 584, being §9-2301, Burns' 1956 Replacement; Acts 1893, ch. 33, §1, p. 32, being §4-3511, Burns' 1946 Replacement.

be deemed proper." *McKane* v. *Durston* (1894),
153 U. S. 684, 687, 688, 38 L. Ed. 867, 868, 14
S. Ct. 913.

An appeal at public expense as a matter of right
in this State is limited to appeals by the defendant from
a judgment of conviction rendered against him
in a criminal action in the manner prescribed
by statute. *Roberts* v. *Byrd, J., etc.* (1957), 237
Ind. 322, 325, 326, 145 N. E. 2d 658; Acts 1905, ch. 169,
§324, p. 584, being §9-2301, Burns' 1956 Replacement.

Coram nobis is a post-conviction remedy, civil in
nature. While it must be filed in the court which ren-
dered the judgment of which complaint is made,
it presents a new cause for the correction of
errors of fact unknown at the time of the trial,
and the burden of proof is upon the petitioner request-
ing relief from the judgment. *State ex rel. Cutsinger*
v. *Spencer, Judge* (1941), 219 Ind. 148, 154, 155, 41
N. E. 2d 601; *State ex rel. Emmert* v. *Gentry* (1945),
223 Ind. 535, 537-540, 62 N. E. 2d 860, 161 A. L. R.
532; *State ex rel. McManamon* v. *Blackford C. Ct.*
(1950), 229 Ind. 3, 10, 11, 95 N. E. 2d 556; *Souerdike*
v. *State* (1952), 231 Ind. 204, 206, 108 N. E. 2d 136.

In *State ex rel. Cutsinger* v. *Spencer, Judge, supra,*
where relator, *pro se,* by petition for writ of mandate
to compel respondent-court to furnish him a certified
copy of the record in the trial of which he was con-
victed of murder, for use in connection with a writ of
error coram nobis proceeding which he proposed to
file, seeking to have the judgment of conviction vacated,
this court, at page 155 of 219 Ind., said:

> "It must be concluded that, under the great
> weight of reason and authority, the petition for
> the writ of error *coram nobis* must be considered
> a new proceeding, civil in nature, —— a remedy
> by which relief may be had from an unconscionable

judgment. The proceeding is initiated by the judgment defendant, and, while it seeks to affect the judgment, and the jurisdiction to consider it is in the court rendering the judgment, it is not a writ of right, and the judgment stands final and presumptively conclusive until the burden of showing that it should be set aside is satisfied.

"A petition for *coram nobis* is not based upon a contention that the judgment attacked is void. It concedes that it is valid upon its face, and that there is no error apparent upon the face of the record. No longer is the state seeking to deprive the defendant of his life, liberty, or property. He is not now 'the accused' in a 'criminal prosecution.' It is he who is now seeking to deprive the State of Indiana of rights concerning his liberty which have vested in it by a judgment which must be presumed to have been procured by due course of law until he sustains the burden of overcoming the presumption. The petitioner is asking that the taxpayers, the State, be required to bear the expense of furnishing him with a certified record of the proceedings in the criminal case. We know of no constitutional provision that requires that the public shall bear any of the expense of the preparation or prosecution of the petitioner's action seeking to overthrow the judgment, nor of any statute requiring or authorizing the expenditure of public funds for such a purpose."

The appellant herein may not, as a matter of right, have a transcript and bill of exceptions furnished him at public expense for use in an appeal from a judgment denying a writ of error coram nobis. *State ex rel. Cutsinger* v. *Spencer, Judge, supra* (1941), 219 Ind. 148, 155, 41 N. E. 2d 601; *State ex rel. Delong* v. *Bain, Judge* (1946), 224 Ind. 240, 78 N. E. 2d 431; *Hamilton* v. *Baker, Judge, etc.* (1955), 234 Ind. 283, 284, 126 N. E. 2d 12 (Cert. denied, 349 U. S. 968, 99 L. Ed. 1289, 75 S. Ct. 904) ; *Roberts* v. *Byrd, J., etc., supra* (1957), 237 Ind. 322, 324, 145 N. E. 2d 658.

The State of Indiana has, by statute, since the decision in the Cutsinger case, provided a remedy for persons in any penal institution in the State, as is the appellant here, who is without funds or sufficient property to employ his own counsel in any post-conviction remedy which may be available to him, by the establishment of the office of Public Defender. Acts 1945, ch. 38, p. 81, being §13-1401, *et seq.*, Burns' 1956 Replacement.

However, as we recently said in *Brown* v. *State* (1961), 241 Ind. 298, 171 N. E. 2d 825, at page 827:

"Consistent with the purpose of the law, the character, ability, responsibility and the broad authority of the office of Public Defender, this court has held:

" 'The Public Defender is not required to represent any prisoner whose assertion that he is unlawfully imprisoned, after due investigation, appears in his sound judgment to have no merit. *In re Kretchmer* (1946), 224 Ind. 559, 69 N. E. 2d 598; *State ex rel. Fulton* v. *Schannen* (1946), 224 Ind. 55, 58, 64 N. E. 2d 798; *Sweet* v. *State* (1948), 226 Ind. 566, 81 N. E. 2d 679.' *State ex rel. Casey* v. *Murray* (1952), 231 Ind. 74, 106 N. E. 2d 911, 912." See also: *Adams* v. *State* (1954), 233 Ind. 555, 121 N. E. 2d 877; *Ellis* v. *United States* (1958), 356 U. S. 674, 2 L. Ed. 2d 1060, 78 S. Ct. 974; *Gershon* v. *United States* (1957), 8 Cir., 243 F. 2d 527 (cert. denied, 355 U. S. 873, 2 L. Ed. 2d 78, 78 S. Ct. 124; *Hayes* v. *United States* (1958), 5 Cir., 258 F. 2d 400, (cert. denied, 358 U. S. 856, 3 L. Ed. 2d 89, 79 S. Ct. 87; *Tweedy* v. *United States* (1960), 9 Cir., 276 F. 2d 649.

The Public Defender is not required to make a travesty of his office by preparing and filing an appeal which, after proper investigation, he believes to be frivolous or without such merit as he could in good con-

science present to this court for consideration. While it is the duty of the Public Defender to present, in favor of the prisoners whom he undertakes to represent, by every honorable and ethical means available, every remedy or defense that is authorized by law, this does not mean that he must violate ethical standards and his conscience by interposing defenses and prosecuting appeals in which there is no good faith or reasonable basis for such action. *State ex rel. White* v. *Hilgemann, Judge* (1941), 218 Ind. 572, 578, 579, 34 N. E. 2d 129.

The Public Defender is governed by the same rules of legal ethics as are lawyers generally, and when he has made a thorough investigation of the case, as was done here, and found no errors or omission which would, in the conscience of an ethical lawyer, furnish merit for an appeal, he properly exercised his discretion in refusing to spend the public's money to pursue it further. *Ellis* v. *United States, supra* (1958), 356 U. S. 674, 2 L. Ed. 2d 1060, 78 S. Ct. 974; *Brown* v. *State, supra* (1961), 241 Ind. 298, 171 N. E. 2d 825.

As was so ably stated by Justice Frankfurter in *Griffin* v. *Illinois, supra* (1956), 351 U. S. 12, 24, 100 L. Ed. 891, at page 901, 76 S. Ct. 585, 55 A. L. R. 2d 1055,

> "When a State not only gives leave for appellate correction of trial errors but must pay for the cost of its exercise by the indigent, it may protect itself so that frivolous appeals are not subsidized and public moneys not needlessly spent."

Having failed to secure the aid and services of the Public Defender to prosecute his appeal, appellant then attempted, *pro se,* to perfect an appeal to this court.

A prisoner may represent himself in an appeal from a judgment in a post-conviction proceeding, but ▮ if he does he is bound by all the rules of procedure in this jurisdiction.

Under similar circumstances, in *Horton* v. *State* (1959), 239 Ind. 446, 448, 158 N. E. 2d 288, 289 (Cert. denied, 362 U. S. 955, 4 L. Ed. 2d 872, 80 S. Ct. 870), we said:

> "We realize appellant is not represented by counsel in this proceeding, but as we have many times observed, he who undertakes the difficult task of acting as his own counsel without training as a lawyer assumes a burden which is great indeed. Nevertheless, while we will liberally construe our rules so that cases may be decided on the merits whenever possible, we cannot overlook flagrant violations of the rules as in the case before us, for they prevent us from intelligently considering the issues presented." See also: *Patton* v. *State* (1960), 240 Ind. 364, 165 N. E. 2d 377, 379.

Rule 2-6 of this court, 1958 Edition, provides, in relevant part:

> "There shall be attached to the front of the transcript, immediately following the index, a specific assignment of the errors relied upon by the appellant in which each specification of error shall be complete and separately numbered."

Rule 2-40 of this court, 1958 edition, provides, in relevant part:

> "An appeal may be taken to the Supreme Court from a judgment granting or denying a petition for a writ of error coram nobis. The sufficiency of the pleadings and of the evidence to entitle the petitioner to a vacation of the judgment will be considered upon an assignment of error that the finding is contrary to law. The transcript of so

much of the record as is necessary to present all questions raised by appellant's propositions shall be filed with the clerk of the Supreme Court within ninety (90) days after the date of the decision. The provisions of the rules of this court applicable to appeals from final judgments shall govern as to the form and time of filing briefs."

The assignment of errors constitutes appellant's complaint in the appeal court, and without a proper assignment of errors there is no jurisdiction. *Davis* v. *Pelley* (1952), 230 Ind. 248, 251, 102 N. E. 2d 910; *Harr* v. *State* (1957), 237 Ind. 320, 321, 144 N. E. 2d 529.

Appellant's paper filed herein entitled, "Appeal of Amended Petition for Writ of Coram Nobis" is, in fact and in substance, a brief containing his argumentative reasons why the judgment of the trial court should be reversed. It contains neither a proper assignment of errors nor a certificate of the judge or the clerk of the court as to the authenticity or genuineness of such parts of the record as are purported to be copies and submitted as a part of such papers. There is no bill of exceptions containing the evidence, nor are there any certified copies of the record in the trial court from which questions attempted to be raised by appellant could be determined, as required by Rule 2-40, *supra*.

The rules of this court have the force and effect of law: *State* v. *Jacobson* (1951), 229 Ind. 293, 98 N. E. 2d 187; *State ex rel. Cox* v. *Sup. Ct. of Marion Co., et al.* (1954), 233 Ind. 531, 533, 121 N. E. 2d 881; they are applicable to and enforcible against *all* without regard to economic status, race or creed. *Patton* v. *State, supra* (1960), 240 Ind. 364, 165 N. E. 2d 377, 379.

Because of the failure of appellant to comply with the provisions of Rule 2-6, *supra,* and Rule 2-40, *supra,* this court is without jurisdiction to determine the questions which he has attempted to raise.

For the foregoing reasons the attempted appeal herein is dismissed.

Appeal dismissed.

Landis, Achor, Arterburn, and Jackson, JJ., concur.

NOTE.—Reported in 173 N. E. 2d 300.