## BAKER *v*. STATE OF INDIANA.

[No. 30,731. Filed November 28, 1966. Rehearing denied January 11, 1967.]

*Isadore D. Rosenfeld,* of South Bend, for appellant.

*John J. Dillon,* Attorney General, and *Murray West,* Deputy Attorney General, for appellee.

ARTERBURN, C. J.—This is an appeal from a judgment convicting the appellant of murder in the prepetration of a robbery. The victim of the killing was one Wesley McElfish, an attendant at the Pacer filling station in South Bend. The appellant was found guilty of murder in the first degree following a jury trial, with the recommendation that he be sentenced to the State Prison for life. The appellant was accordingly sentenced.

Appellant's counsel on July 2, 1964, filed a motion for a new trial, which alleged a number of procedural errors, as well as the insufficiency of the evidence. However, it appears that the appellant chose to supersede the judgment of his counsel, and on July 7, 1964, filed his own motion for a new trial, which was mailed from the Indiana State Penitentiary. This motion for a new trial covered no procedural errors, but merely alleged the evidence was insufficient to sustain the verdict and was contrary to law. Thereafter, appellant's counsel, appointed by the court, filed an amended motion for a new trial on September 14, 1964.

The record shows that the appellant, through this trial and appeal, has attempted at times to override the advice and efforts of counsel appointed for his defense. During the trial he engaged in outbursts during the testimony, such as: "No I didn't", "That is a lie", "I ain't told you nothing", and "That is a lie".

It occurs to us that if the State had committed outbursts

of this sort, a defendant would immediately claim error and an unfair trial by such prejudicial remarks. This points out clearly the State's disadvantage in a trial of this sort. A defendant may commit almost any error during the trial and in the presence of the jury, with the hope of prejudicing the jury and securing an acquittal. If he is acquitted, regardless of his misconduct, he may claim he cannot be retried because of the double jeopardy provision of the Constitution. The State is helpless in securing a fair trial in such cases. All that the State can do is ask the court to admonish the jury to disregard the defendant's statements and misconduct.

At appellant's request, counsel was appointed at taxpayers' expense to aid him in his defense and appeal. Appellant appeared in court, however, and insisted that his appeal be based upon his own motion for a new trial filed on July 7, 1964 and not those filed by his counsel. Thereupon, the two previous motions for a new trial filed by his counsel were withdrawn. The result is that because of appellant's insistence, and disregarding the advice of his counsel, we are limited in this appeal to the question of whether or not the evidence is sufficient to support the verdict or is contrary to law. We said in *Franklin, Jr.* v. *State* (1955), 234 Ind. 418, 420, 126 N. E. 2d 768, 769:

> "If a party sees fit to appear *pro se* and attempts to represent himself before a court when he has ample opportunity to secure competent counsel and to receive legal advice, such person must take the consequences of his own deliberate acts."

Appellant's counsel, nevertheless, has attempted to urge certain claimed procedural errors which are not presented to us for consideration by reason of the appellant's stubborn insistence that his (appellant's) judgment as to procedure be followed, rather than that of counsel appointed to safeguard his rights. He urges that he and his counsel were not given sufficient time to prepare for trial. There is no record which shows that any continuance was

asked, and the record does show that trial counsel was appointed for appellant three months before the date of the trial. There is neither any factual nor procedural basis of this point presented to us in the record.

Counsel further urged, although it was not properly presented for our consideration, that a statement made by one Thomas, an alleged accomplice of the appellant, was erroneously admitted in the evidence. The form of the objections to this evidence is not presented to us, nor is this alleged error included in the motion for a new trial. Under the rules of this Court (Rule 2-6), all claimed errors occurring prior to the filing of the motion for a new trial must be included therein for review on appeal. There is logic and reason in such a rule. The main purpose of it is to give the trial court an opportunity to review any alleged error and correct it while in the trial court, and even grant a new trial in order to avoid an appeal. We cannot disregard such substantial grounds for a rule of procedure, particularly when the appellant (defendant) consciously, knowingly, and in opposition to his counsel, disregarded the rule in preparing his own motion for a new trial.

Rules for presenting issues to the court and for appellate procedure are developed through an evolutionary process, with the ultimate design, through trial and error, of best serving the cause of justice. This means justice to the people of this State, as well as the defendant in a case. We, as judges, cannot disregard or violate long-established rules in the consideration of cases and at the same time insist that parties observe these rules. Judges have no right, upon mere whim, to disregard rules or principles of law. We should not violate a technical rule of appellate procedure to reach and consider an alleged error based upon a technicality in the trial procedure which is not properly presented. The appellant through his own actions, saw fit to prevent a consideration of this issue. He cannot complain.

There remains only for us a consideration of the sufficiency

of the evidence in this case. The evidence shows that on November 5, 1963, at about midnight, the appellant, Charles Baker, and Wilburd Thomas and Mrs. Nathaniel Popps (Febphie Powers) were driving in a car operated by Joe Polk. They had stopped at the Pacer filling station once or twice previously that evening to get a muffler fixed. After the last trip there, the car was driven to an alley at the rear of the station and at that time the appellant asked Thomas if he was "going to do it". Thomas said he was in enough trouble. Then Baker said he would do it himself. He got out of the car and walked up the alley towards the station. Thomas said to be quiet, "I think I heard a shot" and witness Mrs. Nathaniel Popps (Febphie Powers) said she thought it was the backfire of a car. Then appellant came running out of the alley and got in the car and told Polk to get away from there. He asked him where and he said just anywhere. As soon as they were moving, appellant said he thought he had shot a man, referring to the filling station attendant.

A police officer testified that the murder weapon, a gun, was found buried behind a garage where appellant was seen while under surveillance, poking around on the ground. The gun bore the fingerprints of appellant, and those were the only fingerprints on the gun. The driver of the get-a-way car, Joe Polk, testified that appellant admitted shooting a filling station attendant and that he threatened to kill him, Polk, if he told on him. Witness Mrs. Nathaniel Popps (Febphie Powers), who was in the car at the time of the killing, testified she heard appellant say when he came back to the car that he had shot the deceased in the stomach because he saw blood on the man's shirt. This witness saw the appellant take the gun out of his pocket and heard appellant tell Polk to get rid of the gun. The appellant then handed Polk twenty-three dollars and said "that is all I got from the gas station." This is the testimony that supports the verdict.

In our opinion, the evidence is convincing as to the appel-

lant's guilt, regardless of the statement of Thomas, the alleged accomplice.

Judgment affirmed.

Rakestraw and Myers, JJ., concur. Jackson, J., concurs in result. Achor, J., not participating.

NOTE.—Reported in 221 N. E. 2d 432.