James H. HOGAN, Appellant,

v.

REVIEW BOARD OF the INDIANA DEPARTMENT OF EMPLOYMENT AND TRAINING SERVICES, Mable Martin–Scott, Chairperson, George H. Baker, Member, and Mark T. Robbins, Member, and Q–1 Motor Express, Inc. Appellees.

No. 93A02–9305–EX–00231.

Court of Appeals of Indiana, Second District.

May 31, 1994.

James H. Hogan, pro se.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellees.

SULLIVAN, Presiding Judge.

■ In two cases decided this date, two appellate panels have decided that failure to file an assignment of errors deprives the appellate court of review jurisdiction. *Claywell v. Review Bd. of the Indiana Dept. of Employment and Training Serv.*, (1994) 5th Dist. Ind.App., 635 N.E.2d 181;[1] *St. Amand–Zion v. Review Bd. of the Indiana Dept. of Employment and Training Serv.*, (1994) 4th Dist. Ind.App., 635 N.E.2d 184.[2] This district disagrees. The jurisdictional predicate relied upon by the other panels is a relic of the past. The requirement has been abolished.[3]

1. *See also Crowder v. Rockville Training Center* (1994) 5th Dist. Ind.App., 631 N.E.2d 947 (timely filing of record in court of judicial review precludes acquisition of review jurisdiction by Marion Superior Court).

2. The Fourth District earlier reached a similar conclusion in *South Madison Community School Corporation v. Review Board* (1993) 4th Dist. Ind. App., 622 N.E.2d 1042.

3. My colleagues in both *Claywell, supra,* and *St. Amand–Zion, supra,* misstate the requirements of Appellate Rule 7.2(A)(1). The Rule does not state that the record "must include 'an assignment of errors for review from administrative decisions'"; rather, it states that such assignment of errors must be contained within the record only "where used". Quite clearly, in the three cases decided today, an assignment of errors was not used.
To the extent that *Claywell* and *St. Amand–Zion* hold that the requirement for an assignment of errors "is a statutory mandate that we are not free to ignore", they are also in error. Legislation purporting to control matters of procedure do not control when there are procedural rules or case decisions to the contrary. *Augustine v. First Federal Savings & Loan Assn. of Gary* (1979) 270 Ind. 238, 384 N.E.2d 1018.

4. Over time, this period has ranged from a term of court, to ninety, to sixty, and finally, to thirty days.

## REVIEW JURISDICTION

### I. *History of the Jurisdictional Rule*

■ An appeal must be initiated within a specific number of days from an appealable judgment, determination, or award.[4] Historically, our Supreme Court has held that perfecting a timely appeal is jurisdictional. *Vail v. Page* (1911) 175 Ind. 126, 93 N.E. 705. As there are many components in the appellate process, there were numerous ways in which a litigant could fail to timely perfect an appeal. Accordingly, the case books are filled with precedent holding that timely filing a praecipe, an assignment of errors, or a transcript is not merely a procedural rule, but a jurisdictional requirement. *Vail, supra* at 131, 93 N.E. 705; *Davis v. Pelley* (1952) 230 Ind. 248, 102 N.E.2d 910.[5] The filing of a praecipe or an assignment of errors was held to "confer[ ]" or "vest[ ]" jurisdiction with the reviewing court. 230 Ind. at 254, 102 N.E.2d at 912; *Higginson v. State* (1957) 237 Ind. 256, 258, 142 N.E.2d 435, 436. Failure to file a praecipe or assignment of errors

5. In the following cases, the Supreme Court held that failure to file a timely transcript and an assignment of errors required dismissal for lack of jurisdiction: *Brindle v. Anglin* (1965) 246 Ind. 601, 208 N.E.2d 476; *Stanton v. Raub* (1963) 244 Ind. 255, 191 N.E.2d 490; *Meier v. Social Sec. Admin.* (1957) 237 Ind. 421, 146 N.E.2d 239; *Higginson v. State* (1957) 237 Ind. 256, 142 N.E.2d 435; *Taylor v. Meskimen* (1955) 234 Ind. 485, 128 N.E.2d 872; *Dawson v. Wright* (1955) 234 Ind. 626, 129 N.E.2d 796.

In the following case, the Supreme Court held that failure to file a timely assignment of errors, a certificate of the trial judge or court clerk authenticating the record, a bill of exceptions, and a certified copy of the record required dismissal for lack of jurisdiction: *McCrary v. State* (1961) 241 Ind. 518, 173 N.E.2d 300.

In the following cases, the Supreme Court held that failure to file a timely assignment of errors required dismissal for lack of jurisdiction: *Davis, supra; Harr v. State* (1957) 237 Ind. 320, 144 N.E.2d 529.

In the following case, the Supreme Court held that failure to file a proper assignment of errors or bill of exceptions required dismissal for lack of jurisdiction: *Bolden v. State* (1956) 235 Ind. 695, 131 N.E.2d 301.

The foregoing, however, is not an exhaustive list of authorities dealing with this topic.

prevented the court from "obtaining jurisdiction." *Meier v. Social Sec. Admin., supra* n. 2, 237 Ind. at 422, 146 N.E.2d at 240.

The jurisdictional theory was bolstered by our court's promulgation of Ind. Appellate Rule 2(A) which states that if a praecipe is not filed within the time limits contained in the rule, "the right to appeal will be forfeited." (Burns Code Ed.1994).[6] In 1973, our Supreme Court held that where an appellant failed to file a praecipe within the time limits, "the Court of Appeals had *no choice* but to deny the petition for the extension of time...." *Sears, Roebuck and Co. v. Hutchens* (1973) 260 Ind. 561, 563, 297 N.E.2d 807, 808 (emphasis supplied).

II. *Abolition of the Jurisdictional Rule*

Perhaps realizing the dangerous course upon which it had embarked, our Supreme Court all but reversed *Sears, Roebuck and Co.* just three months after it was decided. *Soft Water Utilities v. Le Fevre* (1973) 261 Ind. 260, 301 N.E.2d 745. In *Soft Water Utilities,* the appellant filed a late praecipe due to misinformation supplied by the court clerk. Upon appeal, the appellee argued to the Appellate Court that the mandatory language of App.R. 2(A) required dismissal. 261 Ind. at 268, 301 N.E.2d at 750. After all, if it is the praecipe which confers jurisdiction, where no praecipe is filed, a reviewing court has no power to relieve the appellant from unfortunate circumstances. The Appellate Court agreed and dismissed the appeal. However, our Supreme Court reversed the dismissal stating, "To hold that an appeal is forfeited *ipso facto* ... would raise substantial constitutional questions concerning such procedure in light of the guarantee of the right to appeal." *Id.* The court based its decision, in part, on Art. 7 § 6 of the Indiana Constitution which states that all litigants have an "absolute right to one appeal...." (West's Ann.Code 1985).[7]

Although not expressly stated, the court seemingly relied upon the principle that the Indiana Constitution grants appellate tribunals "inherent power to do everything that is necessary to carry out the purpose of their creation." *Knox County Council v. State ex rel McCormick* (1940) 217 Ind. 493, 498, 29 N.E.2d 405, 407. Cases stating that jurisdiction is conferred by the filing of a praecipe, or some other document, impermissibly restrict the powers granted appellate courts by the Indiana Constitution as those powers have been interpreted by our Supreme Court.

Despite *Soft Water Utilities,* the appellate courts continued to hold that filing a praecipe or assignment of errors was a jurisdictional requirement.[8] Therefore, in 1978, our Supreme Court handed down its decision in *Lugar v. State* "to settle confusion created by three separate opinions of [the appellate] court demonstrating differences of opinion as to the application of procedural rules...." (1978) 270 Ind. 45, 46, 383 N.E.2d 287, 288–89.[9] In *Lugar,* appellant's Motion to Correct Errors, then considered a condition prece-

---

**6.** The rule contained the same phrase in 1973 when *Sears, Roebuck and Co.* was decided. At that time, its stated purpose was to curtail "flagrant abuse" by litigants who waited until the last day of the appellate time limit and then filed a praecipe and a motion for extension of time to prepare the record and file a brief. 260 Ind. at 563, 297 N.E.2d at 809.

**7.** This is not to say that procedural requirements for the exercise of the right of appeal may not be imposed or enforced. It is merely to say that a technical procedural requirement may under some circumstances give way to the inherent authority for the courts to hear the appeal.

**8.** *Haverstick v. Banat* (1975) 1st Dist., 165 Ind. App. 275, 331 N.E.2d 791 (timely filed praecipe is a jurisdictional requirement); *Scott Paper Co. v. Public Serv. Comm'n* (1975) 2d Dist., 164 Ind. App. 565, 330 N.E.2d 137 (timely filed assign-

ment of errors is a jurisdictional requirement). However, some cases from this time period appear to have exercised their inherent discretion as discussed in *Soft Water Utilities, supra. See, e.g., Guido v. Baldwin* (1977) 1st Dist., 172 Ind. App. 445, 360 N.E.2d 842; *Seco Chemicals v. Stewart* (1976) 1st Dist., 169 Ind.App. 624, 349 N.E.2d 733; *American Metal Climax, Inc. v. State Bd. of Tax Comm'rs* (1974) 1st Dist., 159 Ind. App. 468, 307 N.E.2d 507.

It appears that after *Soft Water Utilities,* the appellate courts did get the message and understood that they had inherent discretion to hear a defectively perfected appeal. However, sometime after 1980, the jurisdictional language crept back into the cases with frequency. *See* n. 8 *infra.*

**9.** The court was referring to the three separate opinions in the Court of Appeals decision. 176 Ind.App. 103, 374 N.E.2d 1159.

dent to appeal, did not specify as error the argument made on appeal. It was therefore akin to a failure to file a timely Motion, yet our Supreme Court stated, "This Court has inherent discretionary power to entertain an appeal after the time allowed has expired. The Court of Appeals also has this power." 270 Ind. at 46, 383 N.E.2d at 289 (citations omitted). The court went on to hold that where the time to appeal has expired, the appellant is divested of his or her absolute right to appeal. *Id.* However, the appellate courts may, in the exercise of this inherent discretion, choose to hear the case. *Id. Lugar*, then, stands for the proposition that failure to file a timely Motion to Correct Errors did not deprive the appellate court of jurisdiction. This is axiomatic to the *Lugar* holding. Otherwise, *Lugar* would stand for the proposition that a court may exercise its discretion to decide a case even though it does not have jurisdiction. Such an interpretation would clearly violate a basic judicial principle.

To hold that a praecipe or assignment of errors confers jurisdiction upon the reviewing court is to relinquish our inherent power to entertain a belated appeal. This district, for one, declines to do so. While the jurisdictional language, perhaps because it is so simple, is a tempting way to dispose of untimely appeals, it is inaccurate and unconstitutional. Where an appeal has not been perfected, a court may and should state that it is under no obligation to entertain the cause upon the merits. However, the court may not divest itself of the inherent jurisdiction vested in it by the Indiana Constitution.

Nevertheless, like a persistent weed, the theory that the appellate court has no jurisdiction over a late appeal refuses to be eradicated. Cases decided this year retain the same old language. "Timely filing ... a praecipe is a jurisdictional matter and is an absolute precondition to an appeal." *Bd. of Comm'rs of Lake County v. Foster* (1993) 3d Dist.Ind.App, 614 N.E.2d 949, 950.[10] The language in *Lugar* is clear: the foregoing interpretation of App.R. 2(A) is incorrect and inappropriate.

### III. *Assignment of Errors*

The jurisdictional theory has also been applied to a party's failure to file a timely assignment of errors or motion to correct errors. *Davis v. Pelley, supra,* 102 N.E.2d 910. Although a praecipe and an assignment of errors serve different purposes upon appeal, our court's decisions in *Soft Water Utilities* and *Lugar* are applicable to these documents as well. Both the praecipe and the assignment of errors were deemed jurisdictional for the same reason: they were the instruments by which a party "perfect[ed] the appeal within the time required...." *Meier, supra,* 237 Ind. at 421, 146 N.E.2d at 240. Where the reasoning for holding that a praecipe confers jurisdiction has been found faulty, the reasoning for holding that an assignment of errors confers jurisdiction must also fall. In fact, in *Lugar*, our court did address the merits of the case despite a faulty motion to correct errors.[11]

In *Lugar, supra,* the opposing party argued that the Appellate Court could not con-

---

**10.** *See also, Jackson v. Paris* (1992) 1st Dist. Ind.App., 598 N.E.2d 1106, *trans. denied; State v. Eaton* (1991) 1st Dist. Ind.App., 581 N.E.2d 956, *trans. denied; Vandiver v. Marion County* (1990) 1st Dist. Ind.App., 555 N.E.2d 839; *Hughes v. Morgan County* (1983) 1st Dist. Ind.App., 452 N.E.2d 447; *King v. State* (1992) 2d Dist. Ind. App., 602 N.E.2d 1041; *Int'l Fidelity Ins. Co. v. State* (1992) 3d Dist. Ind.App., 602 N.E.2d 160, *trans. denied; South Madison Community Sch. Corp. v. Review Bd. of Indiana Dep't of Employment & Training Serv.* (1993) 4th Dist. Ind.App., 622 N.E.2d 1042; *CNA Ins. Co. v. Vellucci Serv.* (1992) 5th Dist. Ind.App., 596 N.E.2d 926, *trans. denied.*

However, some cases *have* recognized inherent discretionary powers. *See, Kentucky–Indiana Municipal Power Ass'n v. Public Serv. Co. of Ind.* (1979) 3d Dist., 181 Ind.App. 639, 393 N.E.2d

776; *Tancos v. A.W., Inc.* (1986) 4th Dist. Ind. App., 502 N.E.2d 109, *trans. denied.*

**11.** The motion to correct errors is the modern version of the assignment of errors in original judicial proceedings and appeals therefrom. *Moore v. Spann* (1973) 2d Dist., 157 Ind.App. 33, 298 N.E.2d 490, 494. Therefore, cases treating a motion to correct errors in a judicial setting may be helpful in assessing the reviewability pursuant to an assignment of errors in appeals from administrative proceedings. Although, in appeals from administrative decisions, there is and was no pleading denominated a "motion to correct errors", the assignment of errors is its equivalent insofar as it is a condition precedent to an appeal.

sider an issue not preserved in a timely motion to correct errors.[12] Our Supreme Court disagreed. 270 Ind. at 47, 383 N.E.2d at 289. In so doing, the court relied upon the First District's opinion in *Costanzi v. Ryan* (1977) 1st Dist., 174 Ind.App. 454, 368 N.E.2d 12. In *Costanzi*, the opposing party argued that the appellate court was required to dismiss the appeal for failure to file a timely assignment of errors. The appellate court held that it had jurisdiction to hear the case despite Costanzi's failure to comply with procedural time limits. " '[J]urisdiction is the legal power, as distinguished from the right, to entertain any matter or proceeding, and to act therein....' " 174 Ind.App. at 458, 368 N.E.2d at 14–15. The First District, in turn, relied upon *Soft Water Utilities* in determining that it was within the scope of its powers as a reviewing court to allow an appeal "by act of grace." *Id.*

Failure to file an assignment of errors or motion to correct errors cannot deprive an appellate tribunal of its inherent constitutional power of discretionary review any more than the failure to file a praecipe. Jurisdiction is conferred by the Indiana Constitution or by statute, *State ex rel. Wilson v. Howard Circuit Court* (1957) 237 Ind. 263, 145 N.E.2d 4; jurisdiction cannot be conferred by a piece of paper. *See* n. 5, *supra.*

### IV. *Use of Inherent Power*

■ Our Supreme Court has enunciated some guidelines for the use of a reviewing court's inherent power. In *Lugar*, the court stated that reviewing courts should exercise discretion " 'only in rare and exceptional cases, such as in matters of great public interest, or where extraordinary circumstances exist.' " 383 N.E.2d at 289 (appeal from order requiring the trustees of the Police Pension Fund to include clothing allowance in computation of benefits, which order involved millions of public dollars).

However, other circumstances have been recognized where the use of the appellate courts' inherent power is appropriate. In 1968, the Second District held that failure to specify error in the assignment of errors was fatal. *Indiana State Personnel Bd. v. Parkman* (1968) 142 Ind.App. 255, 233 N.E.2d 798, *rev'd on other grounds*, 252 Ind. 44, 245 N.E.2d 153. In *Lugar*, the appellant's motion to correct errors challenged the judgment upon several grounds, but not upon the basis that the trial court had erred as a matter of law. Faced with almost identical circumstances as the Second District, the court held that the omission was not fatal because the omitted issue was argued extensively in the accompanying memorandum. 270 Ind. at 47, 383 N.E.2d at 289. The court stated, "The purposes of the motion to correct errors have been served. No party, nor any court, has been misled. The Court of Appeals was therefore correct in determining the question on appeal." *Id.*[13]

In *Costanzi, supra*, 368 N.E.2d 12, the appellant sought interlocutory review of the trial court's discovery order. Costanzi followed all procedures except the filing of an assignment of errors. Realizing her omission, Costanzi filed a petition for leave to amend the record to include an assignment of errors as tendered with the petition before the time began running for the opposing party to file its brief. The First District held that this was an appropriate case for exercise of its equitable discretion. The court based its decision upon the fact that at the time the record was filed, "the issues had been defined with certainty and precision" by Costanzi's answers and objections to the discovery, by her brief, by the trial court's certified issues, and by her petition for leave to appeal. 174 Ind.App. at 462, 368 N.E.2d at 17. The court concluded that the procedural errors had not affected the opposing party's ability to argue the case on the merits or the appellate court's ability to review. In reaching it's decision, the court relied upon our Supreme Court's long-standing policy that cases should be decided upon the merits and

---

**12.** The appellant had failed to assert that the trial court erroneously applied the statute in question.

**13.** In the 1968 *Indiana State Personnel Bd.* case, the Second District stated that one of the purposes of an assignment of errors was " 'to confer jurisdiction on the reviewing court ...' " 142 Ind.App. at 267, 233 N.E.2d at 805. It is noteworthy that in 1978, the Supreme Court did not consider this to be one of the purposes of a motion to correct errors. 270 Ind. at 47, 383 N.E.2d at 289. *See* discussion, *supra* n. 9.

justice should not be defeated by technicalities:

> "We must examine our technical rules closely when it appears that invoking them would defeat justice; otherwise we become slaves to the technicalities themselves and they acquire the position of being the ends instead of the means. *This is especially true in a case* such as the one at bar *where we prejudice no one by allowing the record to be corrected at this point.*" 174 Ind. App. at 463, 368 N.E.2d at 17, *quoting American States Ins. Co. v. State* (1972) 258 Ind. 637, 283 N.E.2d 529.

We hold that where the failure to file a motion to correct errors or assignment of errors does not prevent the opposing party or the reviewing court from determining the issues upon review, the court is justified in exercising its inherent power to reach the merits of a case.

### V. *Hogan's Case*

■ By failing to file a timely assignment of errors, Hogan may have lost his absolute right to appeal. That does not prevent this court from exercising its inherent discretionary power to hear the merits of the case.

On July 29, 1993, the praecipe, the record of proceedings, and Hogan's brief were filed with the clerk of this court, well within the extended time limit granted by this court. On August 25, 1993, the Board moved to dismiss the appeal for failure to include an assignment of errors, which motion we denied. We granted the Board thirty-five days, following our ruling within which to file its brief. At that time, the Board had access to the record and Hogan's brief. All of these materials apprised the Board and this court of the issues to be addressed upon appeal. Failure to file an assignment of errors did not prevent the Board from preparing for, or this court from reviewing this cause.

This district has long been of the view that "[n]o useful purpose is served by requiring an assignment of errors in an appeal from an award of [an administrative agency]. The statute provides, in effect, that an assignment that the award is contrary to law is sufficient to present any error. Such an all

encompassing assignment is as helpful as a blank sheet of paper would be." *Means v. Seif Material Handling Co.* (1973) 2d Dist., 157 Ind.App. 492, 494, 300 N.E.2d 895, 896 (footnote omitted). (Sullivan, J. concurring).

In *Means,* the author of this opinion stated that the court should only exercise its inherent power to grant appellate review where good cause is shown. That remains the view, as expressed herein. However, to the extent that the separate concurrence in *Means* would indicate that good cause exists only if the appellant has been completely diligent and wholly without negligence, it is hereby disavowed.

As hereinbefore stated, where no party is prejudiced and where the reviewing court is not disadvantaged by the omitted procedural element, and where no purpose is furthered by placing form over substance, in the sense of requiring completion of the procedural step, this court has inherent power to consider the case upon its merits, and should do so.

That the "forfeiture" language remains in App.R. 2(A), as earlier noted, is not an impediment to the exercise of our inherent jurisdiction to consider imperfectly tendered appeals. App.R. 2(A) contemplates not that the "forfeiture" be self executing. It should not occur by "operation of law." Rather, the Rule contemplates that some entity or authority declare the forfeiture. *King v. State,* supra n. 8, 10, (Sullivan, J., dissenting). That entity or authority is the appellate tribunal to which the appeal is addressed. The court may declare the forfeiture or, in appropriate circumstances, exercise its inherent authority to reach the merits. *See also, Cleaver v. State* (1994) 2d Dist. Ind.App., 629 N.E.2d 1240 (Sullivan, J., dissenting).

The assignment of errors in appeals from the Review Board is not even helpful, much less essential, to appellate review. It is a meaningless appendage to the appellate process. That the motion to correct errors has been all but abolished in the civil and criminal process provides guidance to us in this case.[14] The law does not require useless acts.

---

**14.** Prior to 1989, a motion to correct errors was    a prerequisite for an appeal in almost every case.

We do not unilaterally decide that an assignment of errors is no longer required on appeal. That requirement has been put in place by the legislature, and it is not our prerogative to abolish it. However, we do hold that failure to include such assignment does not deprive us of jurisdiction, nor prevent us from exercising our inherent power to hear this cause. We recognize that *pro se* litigants are held to the same requirements as professional attorneys. *McCrary, supra,* 241 Ind. 518, 533, 173 N.E.2d 300, 307. We also recognize that "[j]udges have no right, upon mere whim, to disregard rules or principles of law." *Baker v. State* (1966) 248 Ind. 85, 88, 221 N.E.2d 432, 434. However, given the compelling policy of deciding cases upon the merits rather than technicalities, we hold that this case should be reviewed and we proceed to do so.

## MERITS OF THE CASE

The record reveals that James Hogan was employed with Q–1 Motor Express, Inc. as an over-the-road truck driver. More than a year after Hogan began working for Q–1, the employer announced that it was switching from a single driver to a team driver operation. Shortly thereafter, Hogan tendered his written resignation to Q–1's dispatcher. Hogan applied for unemployment, and a claims deputy determined that Hogan was entitled to benefits because he had left Q–1 for good cause. An Administrative Law Judge reversed, concluding that Hogan had not left employment for good cause. Hogan then appealed to the Review Board of the Indiana Department of Employment and Training Services. The Board adopted the ALJ's findings and conclusions and affirmed her decision.

Hogan claims the Board erred by finding that he voluntarily left his position and, in the alternative, that he voluntarily left without good cause.

### I. *Voluntary Departure*

■ Hogan argues that he did not voluntarily leave his employment but was discharged by Q–1.[15] Hogan points to portions of the record which would support a finding that his employment was terminated. However, we consider only that evidence favorable to the Review Board's findings. *Jones v. Review Bd. of the Indiana Dept. of Employment and Training Services* (1991) 2d Dist. Ind.App., 583 N.E.2d 196, 198. Hogan operated his truck out of Clarksville, Indiana. Hogan argues that evidence that Q–1 moved its headquarters to Lafayette, Indiana and did not ask him to work out of Lafayette proves that his job was terminated by Q–1. However, James E. Schroering, president of Q–1, testified that Hogan was not asked to work out of Lafayette because Hogan was to continue boarding his truck in southern Indiana as usual. In addition, Hogan testified, "I gave the job up" and "I gave notice by signing the statement that I quit." Record at 33, 34. Hogan specifically waived any objection to the admission of his resignation letter which stated, "Do [sic] to change in company policy I feel that I would be better off quiting [sic] effective Jan 4th." Record at 59. Given the evidence most favorable to the Review Board, a reasonable person would not be bound to conclude that Hogan's employment was terminated by Q–1.

### II. *Good Cause*

■ Hogan argues that the Review Board erred in finding that he did not leave his employment for good cause. As reasons for leaving, Hogan points to the fact that Q–1 was moving its operations 278 miles further away from his house and that Q–1 had changed from single driving to team driving.

However, effective February 16, 1989, a motion to correct errors is only required where a litigant bases his or her appeal upon newly discovered evidence or an excessive or inadequate jury verdict. Ind. Trial Rule 59.

**15.** In his Statement of the Issues, Hogan assigns as error that the Review Board failed to make findings or conclusions upon the issue of voluntary departure. However, the Board did find that Hogan had "resigned his position." Record

at 64. Further, the Board found that Hogan "initiated his own separation from work ..." and "voluntarily left employment." Record at 65. The record reveals that the Board did make a finding upon the issue of voluntary departure.

In the argument section of his brief, Hogan contends that the Board erred in concluding that he voluntarily left employment. It is this contention which we address in full.

Hogan is correct in his contention that increased distance to work may be good cause to leave employment. I.C. 22–4–15–1(c)(6)(C) provides that a person may not be required to keep or take a job where the "individual cannot reasonably commute on a daily basis." (Burns Code Ed.1992). However, Schroering testified that the move to Lafayette would not require Hogan to drive any further because he would have continued to board his truck in the same place he always had.

Hogan contends that his pay was cut in half when Q–1 switched from single driving to team driving. The record reveals that in both single and team driving, a driver is paid per mile. In team driving, a driver is paid for the miles covered while he is at the wheel, and is not paid for miles covered while in the passenger seat or the sleeping area of the truck. Hogan argues that team driving requires him to split his pay with his teammate. However, a single driver is required by law to take an eight hour break at certain intervals. Therefore, team-driving allows the truck to travel longer distances without stopping, while still allowing each driver the required resting time. Instead of pulling over to rest, as a single driver must, the driver takes his break in the truck while his teammate drives.

This arrangement does not require drivers to split their pay as Hogan suggests. The difference between the two operations is in the miles available to each driver. A single driver logs all of the miles for the trip taken; however, due to required lay-overs, a single driver takes longer to drive the same distance covered by a team. In team-driving, while each driver is only paid for the miles he actually drives, the team covers the same distance in less time. Presumably, then, a team driver would be able to take on another job while the single driver is still on the road.

Schroering did testify that the switch from single to team driving would require Hogan to be gone for five 24–hour periods instead of three. Hogan testified that team-driving was uncomfortable because two drivers could not sleep comfortably in the truck as would be necessary should the truck have a layover. Although team driving did change Hogan's employment, we cannot say that a reasonable person would be compelled to conclude that the change rose to the level of good cause to quit.

■ Finally, Hogan argues that the change from single to team driving was a unilateral change in working conditions which he was entitled to reject. An employer is only deemed to have made a unilateral change in working conditions where the prior conditions were specifically agreed upon between the employer and the employee. *Jones v. Review Bd. of Indiana Employment Sec. Div.* (1980) 3d Dist. Ind.App., 399 N.E.2d 844. Where no such agreement exists, the fact that the employer has changed conditions under which an employee began employment does not constitute a unilateral change which the employee is entitled to reject.

Hogan submits his written job description as a specific agreement that he would only drive as a single driver, not a team driver. Specifically, Hogan points to the fact that the description uses the word "driver" in the singular. The agreement contains such phrases as, "Driver must turn in legal log sheets...." Record at 58. The fact that the agreement uses the singular of the word "driver" bears no relation to whether Hogan and Q–1 agreed to a single or a team driving arrangement. Even if Q–1 were to hire drivers under a team-arrangement, each driver (singular) would still be individually responsible for turning in the hours he or she logged. The job description simply does not refer to a single or team driving arrangement and cannot be interpreted as an agreement between Hogan and Q–1 on the subject. Because there is no evidence of a specific agreement that Hogan was only to work as a single driver, a reasonable person would not be bound to find that Q–1 unilaterally changed employment conditions.

The negative award is affirmed.

FRIEDLANDER, J., concurs.

SHARPNACK, C.J., dissents with opinion.

SHARPNACK, Chief Judge, dissenting.

I respectfully dissent as to the issue of jurisdiction on the basis of the reasoning of the majority opinion in *Claywell v. Review Board*, (1994) Ind.App., 635 N.E.2d 181, in which I concurred.