LANE, WARDEN, *v.* BROWN.

No. 283.   Argued January 16–17, 1963.—Decided March 18, 1963.

*William D. Ruckelshaus,* Assistant Attorney General of Indiana, by special leave of the Court, *pro hac vice,* argued the cause for petitioner.   With him on the brief was *Edwin K. Steers,* Attorney General.

*Nathan Levy* argued the cause for respondent.   With him on the brief was *Joseph T. Helling.*

MR. JUSTICE STEWART delivered the opinion of the Court.

The respondent, George Robert Brown, is in an Indiana prison under sentence of death.   He is an indigent.

In a federal habeas corpus proceeding the District Court held that Indiana has deprived Brown of a right secured by the Fourteenth Amendment by refusing him appellate review of the denial of a writ of error *coram nobis* solely because of his poverty. 196 F. Supp. 484. The Court of Appeals affirmed. 302 F. 2d 537. We agree that the Indiana procedure at issue in this case falls short of the requirements of the Fourteenth Amendment of the United States Constitution.

In the administration of its criminal law, Indiana seems to have long pursued a conspicuously enlightened policy in the quest for equal justice to the destitute, and it is not without irony that the constitutional problem in this case stems from legislation evidently enacted to enlarge that State's existing system of aid to the indigent. For more than a hundred years the Indiana Constitution has guaranteed the assistance of counsel to every defendant in a criminal trial.[1] This right has been extended to include the right of an indigent to consult with a lawyer prior to arraignment,[2] as well as the right to be represented by counsel on appeal from a criminal conviction.[3] It has also been established for more than a century in Indiana that a poor person appealing a criminal conviction may secure a transcript of the trial record without

---

[1] Ind. Const., Art. 1, § 13 (1851). In 1854 the Supreme Court of Indiana said: "It is not to be thought of, in a civilized community, for a moment, that any citizen put in jeopardy of life or liberty, should be debarred of counsel because he was too poor to employ such aid. No Court could be respected, or respect itself, to sit and hear such a trial." *Webb* v. *Baird*, 6 Ind. 13, 18. (Quoted in the dissenting opinion in *Betts* v. *Brady*, 316 U. S. 455, at 476–477.)

[2] *Batchelor* v. *State*, 189 Ind. 69, 125 N. E. 773 (1920).

[3] *State* v. *Hilgemann*, 218 Ind. 572, 34 N. E. 2d 129 (1941); *State ex rel. Grecco* v. *Allen Circuit Court*, 238 Ind. 571, 575, 153 N. E. 2d 914, 916 (1958). But see *State ex rel. Macon* v. *Orange Circuit Court*, 243 Ind. 429, 185 N. E. 2d 619.

cost.[4] In 1945 the Indiana Legislature enacted the so-called Public Defender Act, a law to deal with the problem of providing legal assistance to indigent prisoners in postconviction proceedings. It is the operation of the provisions of this law, as interpreted by the Supreme Court of Indiana, which we find constitutionally deficient in the present case.

The 1945 legislation created the office of Public Defender, to be appointed by the State Supreme Court,[5] and, as later amended, authorized him to employ "such deputies, stenographers or other clerical help as may be required to discharge his duties . . . ."[6] The provisions of the law which are at the root of the problem in the case before us are those which define the Public Defend-

---

[4] *Falkenburgh* v. *Jones,* 5 Ind. 296 (1854); *State ex rel. Morris* v. *Wallace,* 41 Ind. 445 (1872). Since 1893, the right to a transcript has been conferred by statute. Burns Ind. Ann. Stat., 1946, § 4–3511.

[5] "There is hereby created the office of Public Defender. The public defender shall be appointed by the Supreme Court of the state of Indiana to serve at the pleasure of said court, for a term of four [4] years. He shall be a resident of the state of Indiana, and a practicing lawyer of this state for at least three [3] years. The Supreme Court is authorized to give such tests as it may deem proper to determine the fitness of any applicant for appointment." Indiana Acts 1945, c. 38, § 1, Burns Ind. Ann. Stat., 1956, § 13–1401.

[6] "The public defender shall be paid an annual salary to be fixed by the supreme court of this state. He may, with the consent of said court, appoint or employ such deputies, stenographers or other clerical help as may be required to discharge his duties at compensation to be fixed by the court. He shall be provided with an office at a place to be located and designated by the Supreme Court, and he shall be paid his actual necessary and reasonable traveling expenses, including cost of food and lodging when away from the municipality in which his office is located on business of the office of the public defender, and he shall be provided with office furniture, fixtures and equipment, books, stationery, printing services, postage and supplies." Indiana Acts 1945, c. 38, § 4, as amended, Burns Ind. Ann. Stat., 1956, § 13–1404.

er's basic duties and which authorize him to order hearing transcripts, or their equivalent, at public expense:

> "It shall be the duty of the public defender to represent any person in any penal institution of this state who is without sufficient property or funds to employ his own counsel, in any matter in which such person may assert he is unlawfully or illegally imprisoned, after his time for appeal shall have expired." [7]

> "The public defender may order on behalf of any prisoner he represents a transcript of any court proceeding, including evidence presented, had against any prisoner, and depositions, if necessary, at the expense of the state, but the public defender shall have authority to stipulate facts contained in the record of any court, or the substance of testimony presented or evidence heard involving any issue to be presented on behalf of any prisoner, without the same being fully transcribed." [8]

The rules of the Indiana Supreme Court expressly permit an appeal from the denial of a writ of error *coram nobis,* but also require that a transcript be filed in order to confer jurisdiction upon the court to hear such an appeal.[9] The Indiana court has held that under the

---

[7] Indiana Acts 1945, c. 38, § 2, Burns Ind. Ann. Stat., 1956, § 13–1402.

[8] Indiana Acts 1945, c. 38, § 5, Burns Ind. Ann. Stat., 1956, § 13–1405.

[9] "Rule 2–40 of this court, 1958 Edition, provides, in relevant part:

" 'An appeal may be taken to the Supreme Court from a judgment granting or denying a petition for a writ of error coram nobis. The sufficiency of the pleadings and of the evidence to entitle the petitioner to a vacation of the judgment will be considered upon an assignment of error that the finding is contrary to law. The transcript of so much of the record as is necessary to present all questions raised by appellant's propositions shall be filed with the clerk of the Supreme Court within ninety (90) days after the date of the decision. The provisions of the rules of this court applicable to appeals

above-quoted provisions of the Public Defender Act, only the Public Defender can procure a transcript of a *coram nobis* hearing for an indigent; an indigent cannot procure a transcript for himself and appeal *pro se,* nor can he secure the appointment of another lawyer to get the transcript and prosecute the appeal. *State ex rel. Casey* v. *Murray,* 231 Ind. 74, 106 N. E. 2d 911; *Jackson* v. *Reeves,* 238 Ind. 708, 153 N. E. 2d 604; *Willoughby* v. *State,* 242 Ind. 183, 177 N. E. 2d 465. The upshot is that a person with sufficient funds can appeal as of right to the Supreme Court of Indiana from the denial of a writ of error *coram nobis,* but an indigent can, at the will of the Public Defender, be entirely cut off from any appeal at all.

The impact of this system is fully illustrated by the history of the present case. Brown was convicted of murder in an Indiana trial court and sentenced to death. The conviction was affirmed on appeal, 239 Ind. 184, 154 N. E. 2d 720, and this Court denied a petition for a writ of certiorari. 361 U. S. 936. Thereafter, Brown filed in the Federal District Court an application for habeas corpus which was dismissed because of failure to exhaust available state remedies. Brown then filed a petition for a writ of error *coram nobis* in the state trial court. After a hearing at which Brown was represented by the Public Defender, the court denied relief. Brown requested the Public Defender to represent him in perfecting an appeal to the Indiana Supreme Court. This request was refused because of the Public Defender's stated belief that an

---

from final judgments shall govern as to the form and time of filing briefs.' " *McCrary* v. *State,* 241 Ind. 518, 533–534, 173 N. E. 2d 300, 307.

"Rule 2–6 of this court, 1958 Edition, provides, in relevant part: " 'There shall be attached to the front of the transcript, immediately following the index, a specific assignment of the errors relied upon by the appellant in which each specification of error shall be complete and separately numbered.' " 241 Ind., at 533, 173 N. E. 2d, at 307.

appeal would be unsuccessful.[10]  Brown next applied to the state trial court for a transcript of the *coram nobis* hearing and the appointment of counsel to perfect an appeal.  This application was denied.  The Supreme Court of Indiana refused to order the trial court to grant the petitioner's request for a transcript and appointment of counsel, stating:

> "Under the circumstances presented, the public defender was under no duty to request a transcript of the proceedings in error coram nobis and, in the absence of a request from said office, the trial court was under no duty to provide a certified copy of said proceedings at public expense." *Brown* v. *Indiana,* 241 Ind. 298, 302, 171 N. E. 2d 825, 827.

Brown again sought a writ of certiorari in this Court, and his petition was again denied, "without prejudice to an application for a writ of habeas corpus in the appropriate United States District Court . . . ." 366 U. S. 954.

Brown finally instituted in the Federal District Court the habeas corpus proceedings we now review.  His petition alleged, in addition to four substantive grounds for relief,[11] "That Relator has been denied equal protection of

---

[10] "After a careful review of your hearing had on June 1 on your petition for Writ of Error Coram Nobis in the Criminal Court of Lake County, will advise that I am unable to find any error or errors that would have any merit to assign upon an appeal; therefore, I am hereby informing you that my office will not appeal the judgment denying your Petition for Writ of Error Coram Nobis."

[11] "(1) Inadequate representation by court-appointed counsel at his trial in Lake County, Indiana Criminal Court.

"(2) Procurement by State authorities of a confession from petitioner through fear produced by threats and prolonged questioning during an illegal detention.

"(3) Admission of confession before proof of the corpus delicti.

"(4) Admission into evidence of exhibits and testimony of petitioner's prior commitment to a mental institution and crimes of rape and attempted rape alleged to have been committed by the petitioner."

the law in that he was effectively denied an appeal from the Order of the Lake County, Indiana Criminal Court, denying his petition for writ of error coram nobis because of his poverty and inability to secure a transcript, which right of appeal is available to all defendants in Indiana who can afford the expense of a transcript." The court, directing its attention only to this last issue, held "that the actions of the State of Indiana have denied petitioner equal protection of the laws," and ordered that Brown "be given a full, appellate review of his Coram Nobis denial" within 90 days or such additional time as the court might thereafter determine. 196 F. Supp., at 488. Upon the failure of Indiana to provide such a review, the District Court ordered Brown's discharge from custody, but granted a stay pending appellate review. The Court of Appeals affirmed the District Court's judgment, directing, however, that Brown continue to be held in custody pending final disposition of the case by this Court. 302 F. 2d, at 540.

Both the District Court and the Court of Appeals were of the opinion that the issue in the present case is controlled by recent decisions of this Court which have held constitutionally invalid procedures of other States found substantially to deny indigent defendants the benefits of an existing system of appellate review. We are in complete agreement.

In *Griffin* v. *Illinois,* 351 U. S. 12, the Court held that a State with an appellate system which made available trial transcripts to those who could afford them was constitutionally required to provide "means of affording adequate and effective appellate review to indigent defendants." *Id.,* at 20. "Destitute defendants," the Court held, "must be afforded as adequate appellate review as defendants who have money enough to buy transcripts." *Id.,* at 19. In *Burns* v. *Ohio,* 360 U. S. 252, involving a $20 fee for filing a motion for leave to appeal a felony

conviction to the Supreme Court of Ohio, this Court reaffirmed the *Griffin* doctrine, saying that "once the State chooses to establish appellate review in criminal cases, it may not foreclose indigents from access to any phase of that procedure because of their poverty. . . . This principle is no less applicable where the State has afforded an indigent defendant access to the first phase of its appellate procedure but has effectively foreclosed access to the second phase of that procedure solely because of his indigency:" *Id.,* at 257. In *Smith* v. *Bennett,* 365 U. S. 708, the Court made clear that these principles were not to be limited to direct appeals from criminal convictions, but extended alike to state postconviction proceedings. "Respecting the State's grant of a right to test their detention," the Court said, "the Fourteenth Amendment weighs the interests of rich and poor criminals in equal scale, and its hand extends as far to each." *Id.,* at 714. In *Eskridge* v. *Washington Prison Board,* 357 U. S. 214, the Court held invalid a provision of Washington's criminal appellate system which conferred upon the trial judge the power to withhold a trial transcript from an indigent upon the finding that "justice would not be promoted . . . in that defendant has been accorded a fair and impartial trial, and in the Court's opinion no grave or prejudicial errors occurred therein." *Id.,* at 215. There it was said that "[t]he conclusion of the trial judge that there was no reversible error in the trial cannot be an adequate substitute for the right to full appellate review available to all defendants in Washington who can afford the expense of a transcript." *Id.,* at 216.

The present case falls clearly within the area staked out by the Court's decisions in *Griffin, Burns, Smith,* and *Eskridge.* To be sure, this case does not involve, as did *Griffin,* a direct appeal from a criminal conviction, but *Smith* makes clear that the *Griffin* principle also applies to state collateral proceedings, and *Burns* leaves no doubt

that the principle applies even though the State has already provided one review on the merits.

In *Eskridge* the Court held constitutionally invalid a provision which permitted a trial judge to prevent an indigent from taking an effective appeal. The provision before us confers upon a state officer outside the judicial system power to take from an indigent all hope of any appeal at all. Such a procedure, based on indigency alone, does not meet constitutional standards.[12] We have no doubt that Indiana, with its historic concern for equal justice under law, will find no practical difficulty in correcting the constitutional deficiency which this case exposes.

The judgments of the Court of Appeals and of the District Court are vacated and the case remanded to the latter, so that appropriate orders may be entered ordering Brown's discharge from custody, unless within a reasonable time the State of Indiana provides him an appeal on the merits to the Supreme Court of Indiana from the denial of the writ of error *coram nobis*.

*It is so ordered.*

Separate opinion of MR. JUSTICE HARLAN, in which MR. JUSTICE CLARK concurs.

I think it falls short of the requirements of due process for a State to foreclose an indigent from appealing in a case such as this at the unreviewable discretion of a Public Defender by whom, or by whose office, the indigent has been represented at the trial. It ignores the human equation not to recognize the possibility that a Public

---

[12] We do not deal here with a preliminary screening procedure applicable alike to all *coram nobis* appeals. Nor need we determine in this case what procedural measures Indiana might constitutionally take to reduce the public expense of indigents' appeals. See *Griffin v. Illinois,* 351 U. S., at 20.

Defender so circumstanced may decide not to appeal questions which a lawyer who has had no previous connection with the case might consider worthy of appellate review. (I do not of course remotely intimate that such is the situation here.)

Were it clear that the decision of this Public Defender not to appeal had been subject to judicial review at the instance of the prisoner, I should have voted to sustain this conviction. However, the State Attorney General has candidly informed us that the Indiana law is unclear on this score.

Accordingly, while agreeing with the Court's action in remanding this case, I would instruct the District Court to discharge the prisoner only if the Indiana Supreme Court fails, within a reasonable time, to accord him a review of the Public Defender's decision not to appeal the denial of *coram nobis*.