John WRIGHT, Jr., Petitioner,

v.

K. B. BAILEY, Warden of North Carolina Central Prison, Raleigh, Wake County, North Carolina, Respondent.

Civ. No. 1432.

United States District Court
E. D. North Carolina,
Raleigh Division.

April 16, 1964.

Barry T. Winston, Chapel Hill, N. C., for petitioner.

T. W. Bruton, Atty. Gen., of N. C., Theodore C. Brown, Jr., Staff Atty., for respondent.

LARKINS, District Judge:

## SUMMARY

This cause is brought by a state prisoner, through counsel, seeking a writ of habeas corpus pursuant to the provisions of Title 28 U.S.C.A. § 2254. The petition, filed in forma pauperis, was denied on June 3, 1963, but, on appeal, was remanded by the United States Court of Appeals for the Fourth Circuit, October 18, 1963 with direction to grant a plenary hearing. Subsequently, this court entered a show cause Order, returnable at New Bern on November 15, 1963. Upon motion of the respondent, along with consent of petitioner's counsel, the hearing was continued until the Raleigh Term commencing March 9, 1964 in order to accommodate the litigants, counsel, and witnesses. On March 12, 1964, the court held a plenary hearing at which the petitioner appeared personally and through counsel. Following the introduction of its evidence, the State declared it had shown cause and moved to dismiss the application. The motion was taken under advisement and the petitioner submitted his evidence and later filed

a memorandum in opposition to the dismissal motion.

The illegal restraint of petitioner's liberty is based upon a denial of due process of law as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States. The allegations are that:

(1) The petitioner was denied the right to a prompt preliminary hearing.

(2) A request for counsel at the preliminary hearing by the accused was denied.

(3) The petitioner was convicted under a defective indictment which failed to inform the petitioner that he was being tried for murder in the first degree.

(4) The applicant expressed to the trial judge his personal dissatisfaction with his court-assigned counsel and requested appointment of new counsel, which request was denied.

(5) His request for the appointment of counsel on appeal was denied.

(6) The applicant was denied an appeal because he could not post the required $200.00 appeal bond.

(7) The applicant was denied a transcript for appeal because of his indigency.

### FINDINGS OF FACT

The petitioner was arrested on November 15, 1960, for the murder in the first degree of one Moses Farrish in Alamance County. With the petitioner's knowledge and endorsement his family negotiated with Mr. Clarence Ross and Mr. B. F. Wood, attorneys from Graham, North Carolina, to defend him at his trial. Prior to the preliminary hearing Mr. Ross requested a continuance of the hearing so that an arrangement could be made by which he and Mr. Wood could represent the defendant. The hearing was continued until the Justice of the Peace was notified by these attorneys that they had withdrawn from the case. On December 2, 1960, the preliminary hearing was held before the Justice of the Peace, C. C. Bayliff. At that time, the petitioner, responding to questions posed by the Magistrate, stated that he was not represented by counsel and that he did not wish to continue the hearing until he could employ an attorney. At the hearing, he declined to testify in his behalf and to exercise his right of cross-examination of the witnesses. There is no evidence indicating that the applicant requested the appointment of counsel or that the Magistrate had any reason to believe that the accused could not afford to employ counsel.

At the February 1961 Term of the Superior Court of Alamance County, Messrs. Spencer B. Ennis and William F. Briley, attorneys in Graham, North Carolina, were assigned by the trial court to represent the petitioner in his forthcoming trial. In carrying out this assignment these attorneys discussed the case with Mr. B. F. Wood who had previously talked to the defendant and they interviewed the petitioner on several occasions. Showing some reluctance in discussing the facts of his case with these attorneys in early interviews, the petitioner later became co-operative, discussed the case with them and gave his attorneys names of witnesses whom he wanted interviewed. These attorneys examined the bill of indictment and interviewed the principal witnesses for the State. They were unable to gather much information from the witnesses listed by the petitioner and, following a conference with the trial judge, Mr. Moses Burt, a Negro attorney from Burlington, North Carolina, was appointed to assist in the case. It was the consensus of the attorneys and judge that Mr. Burt would be able to elicit more information from the Negro witnesses who were recalcitrant in interviews with attorneys Ennis and Briley.

Pursuant to an agreement among the attorneys, solicitor, and petitioner, the trial of the case was not called during the March 1961 Term and was carried over from the May Term when it could not be reached. It was finally tried during

the June 1961 Term of the Superior Court of Alamance County. The day before the trial, Mr. Walter D. Barrett, an attorney from Graham, North Carolina, who is now deceased, was employed by the family of the petitioner to represent him. Thus, at the trial this applicant was represented by four attorneys: Messrs. Ennis, Briley, and Burt, all of whom were court-appointed, and Mr. Barrett, who was privately retained by petitioner's family.

The petitioner, through counsel, entered a plea of not guilty; however, after trial, the jury returned a verdict of guilty with a recommendation of life imprisonment. The trial judge imposed a sentence of confinement for the term of applicant's natural life. At the close of the State's evidence and at the close of the defendant's evidence the defense attorneys made the usual motions for judgment of nonsuit. Following the verdict the defense made these motions:

(1) To set aside the verdict as being contrary to the greater weight of the evidence.

(2) For a new trial.

(3) For arrested verdict.

Each motion was denied to which an exception was taken. Notice of appeal to the Supreme Court of North Carolina was given and defendant was granted sixty days in which to serve its case. Appeal bond was fixed at $200.00.

Although there is nothing to substantiate the petitioner's averments that he was denied an appeal because he could not post the appeal bond or that a request for counsel on appeal was denied, there is nothing to the contrary appearing so the court accepts these allegations as true.

The petitioner requested a transcript of the trial proceedings and filed an affidavit in forma pauperis. He was informed that the court reporter could not furnish him a copy free but she would have to be paid for transcribing her notes. Thus, he was prevented from securing a transcript solely because of his indigency.

The record discloses and the respondent does not deny that this petitioner has exhausted all of his available State remedies as required by Title 28 U.S.C.A. § 2254.

## CONCLUSIONS OF LAW

■ The facts in this case do not support the petitioner's allegation that he was denied a prompt preliminary hearing. The evidence clearly indicates that postponement of the hearing occurred upon request of counsel whom the accused was attempting to retain. The delay in the hearing was to accommodate this petitioner who, along with his family, was negotiating for a satisfactory arrangement with counsel concerning their representation. After the Magistrate learned that counsel had severed connection with the case he promptly held the hearing.

■ The contention that the applicant was denied counsel at the preliminary hearing is without merit. The Magistrate who conducted the hearing testified that petitioner did not request counsel but stated that he was without legal representation and did not wish to continue the hearing until he could employ counsel. There is nothing in the evidence which indicates that petitioner was without funds with which to retain counsel at this time. The Magistrate had every reason to believe that he could retain counsel since he had made only one effort to secure an attorney, but had done nothing else. There is no evidence to show that petitioner was unable to afford counsel.

■ The petitioner offered no evidence in support of his allegation that the bill of indictment was defective and it has not been seriously argued to the court. Nothing else appearing, the court considers this claim as being without substance.

■ The petitioner contends that he expressed his dissatisfaction with his attorneys to the trial judge in a letter and requested the appointment of new counsel, which was denied. But there is no evidence from which it might be inferred

that the petitioner was prejudiced by the alleged inadequacies of his counsel. He has made general and conclusional averments without sufficient facts to support them. The fact that this petitioner was dissatisfied with his attorneys from a personal standpoint has absolutely nothing to do with the competent and able representation with which he was afforded. See DuBoise v. State of North Carolina, 225 F.Supp. 51 (E.D.N.C. 1964).

■■ The facts fully support the allegation of the petition that this applicant was denied an appeal from his conviction solely because of his indigency. He was a pauper unable to post the appeal bond or to pay for the trial transcript. In Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), Justice Black clearly stated:

"There is no meaningful distinction between a rule which would deny the poor the right to defend themselves in a trial court and one which effectively denies the poor an adequate appellate review accorded to all who have money enough to pay the costs in advance. It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all. See, e. g., McKane v. Durston, 153 U.S. 684, 687–688 [14 S.Ct. 913, 38 L.Ed. 867]. But that is not to say that a State that does grant appellate review can do so in a way that discriminates against some convicted defendants on account of their poverty. Appellate review has now become an integral part of the Illinois trial system for finally adjudicating the guilt or innocence of a defendant. Consequently at all stages of the proceedings the Due Process and Equal Protection Clauses protect persons like petitioners from invidious discriminations. * * *

"All of the States now provide some method of appeal from criminal convictions, recognizing the importance of appellate review to a correct adjudication of guilt or innocence. Statistics show that a substantial proportion of criminal convictions are reversed by state appellate courts. Thus to deny adequate review to the poor means that many of them may lose their life, liberty or property because of unjust convictions which appellate courts would set aside. Many States have recognized this and provided aid for convicted defendants who have a right to appeal and need a transcript but are unable to pay for it. A few have not. Such a denial is a misfit in a country dedicated to affording equal justice to all and special privileges to none in the administration of its criminal law. There can be no equal justice where the kind of trial a man gets depends on the amount of money he has. Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts."

Adhering to the reasoning in this case, later decisions have firmly established that for a State to deny appellate review to a convicted defendant solely because of his poverty is a violation of the due process clause as guaranteed by the Fourteenth Amendment of the Federal Constitution. See Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963). Here the petitioner has been unable to perfect and pursue his appeal merely because of his pauperism. Because of his inability to perfect his appeal the State of North Carolina denied appellate review to this petitioner. Such denial is a violation of the Due Process Clause of the Fourteenth Amendment.

THEREFORE, it is ORDERED;

(1) That respondent's Motion to Dismiss be, and it is hereby denied; and

(2) That the action is temporarily remanded to the Superior Court of Ala-

mance County with direction that this indigent petitioner be furnished, without cost, within a reasonable time, a transcript; and

(3) That appellate counsel be appointed for the indigent petitioner in order that petitioner may perfect his appeal to the Supreme Court of North Carolina; and

(4) The petition for a writ of habeas corpus be, and the same is retained by this court and the hearing continued to the 25th day of May, 1964 at Wilson, North Carolina, to show compliance.

The Clerk is directed to serve a copy of this Opinion and Order upon all counsel of record and the petitioner.