No. 44,719

WILLIAM F. STAHL, *Appellee*, v. THE BOARD OF COUNTY COMMISSIONERS OF GEARY COUNTY, KANSAS; Keith F. Devenney, Commissioner, Frank H. Duffy, Commissioner, and Jack Miller, Commissioner, *Appellants*.

(426 P. 2d 134)

Opinion filed April 8, 1967.

*Joseph E. Cole,* Assistant County Attorney, argued the cause, and *R. Edgar Johnson,* County Attorney, was with him on the brief for the appellants.

*William F. Stahl,* of Junction City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The plaintiff, William F. Stahl, is a practicing attorney of this state, maintaining an office in Junction City, Kansas. On October 21, 1964, he was appointed by the District Court of Geary County, Kansas, to represent an indigent prisoner, one Christopher D. Walters, who had filed a motion pursuant to K. S. A. 60-1507.

When his legal services were concluded, Mr. Stahl presented a claim for compensation to the Board of County Commissioners of Geary County. Payment of this claim was refused and this action for a declaratory judgment was then commenced, under the provisions of K. S. A. 60-1701. The trial court found in favor of the plaintiff and entered judgment ordering the Board to pay the claim. The present appeal is from that judgment.

There is no dispute as to the facts, most of which have been stipulated. In addition to the facts already related, the record shows that Mr. Stahl represented Walters from the date of his appointment in October, 1964, through May, 1965; that he did all

things necessary as counsel and devoted thirty-two (32) hours to the case; and that his claim was for $160.

The Stahl claim was rejected on the ground that the Board had no legal authority to pay the same from county funds. This remains the basic issue on appeal.

It must be conceded that the question is not free from difficulty. K. S. A. 60-1507, pursuant to which the prisoner, Walters, filed his motion in the Geary County District Court, is found in the new Code of Civil Procedure adopted by the 1963 Legislature. In substance, this statute permits a prisoner who is in custody and claims the right to be released either on constitutional or judicial grounds, or because the sentence is excessive or otherwise subject to collateral attack, to move the court which imposed the sentence to vacate, set aside, or correct the same.

Thus, the statute provides what is generally known as a post-conviction remedy, superseding, in many instances, the old and familiar remedy of habeas corpus. The new procedure has this advantage—it permits alleged errors to be reviewed by the court which tried the prisoner and is familiar with his case. It also eliminates the congestion which formerly existed in judicial districts where penal institutions were located.

Soon after K. S. A. 60-1507 became effective it was apparent that rules would be required to govern its procedures. Accordingly, this court, on October 16, 1964, adopted Rule No. 121 (194 Kan. xxviii) prescribing the practice to be followed in "1507" actions. Subparagraph ($i$) of the rule relates to the appointment of counsel. The section reads:

"If a motion presents substantial questions of law or triable issues of fact the court shall appoint counsel to assist the movant if he is an indigent person."

This provision was incorporated in the rule to comply with pronouncements of the United States Supreme Court in recent cases. In *Gideon v. Wainright,* 372 U. S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, the principle was firmly established that the right of an indigent accused to the assignment of counsel is a fundamental right essential to his obtaining a fair trial and that the Sixth Amendment's guarantee of counsel is extended to the states via the Fourteenth Amendment.

On the very day *Gideon* was handed down, *Lane v. Brown,* 372 U. S. 477, 9 L. Ed. 2d 892, 83 S. Ct. 768, was decided. In this

case, Brown, an indigent person convicted of murder, petitioned the trial court for a writ of error *coram nobis.* When the writ was denied, Brown attempted to appeal to the State Supreme Court but was prevented from so doing because, under Indiana procedure, only the public prosecutor could procure the free transcript necessary to an appeal, which, in this case, the prosecutor refused to procure.

In holding that the Indiana procedure effectively prevented an indigent defendant from appealing the denial of a writ of *coram nobis,* whereas a defendant with sufficient funds could appeal by purchasing a transcript, the United States Supreme Court said:

". . . In *Burns v. Ohio,* 360 U. S. 252, involving a $20 fee for filing a motion for leave to appeal a felony conviction to the Supreme Court of Ohio, this Court reaffirmed the *Griffin* doctrine, saying that once the State chooses to establish appellate review in criminal cases, it may not foreclose indigents from access to any phase of that procedure because of their poverty. . . . This principle is no less applicable where the State has afforded an indigent defendant access to the first phase of its appellate procedure but has effectively foreclosed access to the second phase of that procedure, solely because of his indigency.' . . . In *Smith v. Bennett,* 365 U. S. 708, the Court made clear that these principles were not to be limited to direct appeals from criminal convictions, but extended alike to state post-conviction proceedings. . . ." (pp. 483-484.)

Considering both *Gideon* and *Lane* in context, this court concluded that in post-conviction proceedings had under K. S. A. 60-1507, due process required that counsel be appointed to assist indigent prisoners at the trial whenever substantial questions of law or triable issues of fact were presented. Accordingly, subsection (*i*) was made a part of Rule No. 121.

However, no specific provision for compensation of appointed counsel is included in the rule. The rule is completely silent on that point. This is true respecting both appellate counsel and trial counsel, although compensation of the latter is the only issue involved here.

A brief glance at a bit of historical background may prove helpful. As pointed out in *State v. Young,* 196 Kan. 63, 410 P. 2d 256, Kansas has provided for appointment of counsel to assist indigent defendants accused of serious crime from the time of its first Territorial Legislature in 1855.

Under early statutes, counsel appointed to represent an indigent person charged with felony, served without compensation. The Kansas court so ruled in *Case v. Board of County Commissioners,*

4 Kan. 441, where the Shawnee County District Court made an allowance of $15 for the services of an attorney appointed to assist a defendant on trial for larceny. The county refused to allow the claim, and suit was brought against the board of county commissioners. The lower court found for the board and the plaintiff appealed. In affirming the decision, the court said:

"The law makes provisions for such appointments, but not for any compensation. Whether this is the result of oversight, or design, is alike immaterial; the fact is fatal to the plaintiff's claim.

. . . . . . . . . . . . .

"It is true that it would be a disgrace to the jurisprudence of the age if a man should be tried without counsel, merely because he is poor. . . . Yet if the legislature makes no provision for the poor, those who give in private charity would look in vain to the county for reimbursement. . . .

"The law has given us no power. If the boards of county commissioners close their bars to the appeals, and the legislature will not act, then, as heretofore. the matter must rest in the tender conscience and manly honor of the members of the bar." (pp. 442-443.)

But times changed. Beginning in 1941, an attorney appointed by the court to assist an indigent defendant about to be arraigned on indictment or information, was entitled to collect from the county $10 per day for his services. (Ch. 291, Laws of Kansas, 1941.) The law was again amended in 1963 to provide that appointed counsel should receive a reasonable fee for his services, to be allowed by the trial judge, and paid from the general fund of the county. (K. S. A. 62-1304.)

In the present case, however, the board insists that a proceeding under K. S. A. 60-1507 is a civil matter, not a criminal action; that being a civil procedure, the provisions of K. S. A. 62-1304 do not apply so far as payment of counsel is concerned; and that there is no statutory authority for a county to compensate an attorney appointed for an indigent person in a "1507" proceeding.

But the trial court found otherwise. Its findings read, in part:

"K. S. A. 60-1507 can only be read as a motion to vacate or a procedure falling within the purview of the common law writs of coram nobis or coram vobis. Both the motion and the writ ipso facto revest the court with jurisdiction of the original cause. . . ."

At this point we digress, a moment, to mention that our research has discovered very few states which have enacted legislation to compensate counsel assigned to assist an indigent person in a post-conviction procedure, and there are even fewer jurisdictions in which the precise question before us, has been litigated. In four

states we have found that statutory provision is made for payment of counsel from state funds and in two others, out of county funds. We do not claim, however, that this is a complete tabulation.

Returning to the main stream, we believe it clear that, historically, the appointment of counsel for an indigent defendant at the trial level has always been the responsibility of the trial court. It is clear, also, that whatever compensation has been paid appointed trial counsel has, in this state, come from county funds, not state. Historically, also, the necessary expenses of prosecution have been the burden of the county. (See K. S. A. 62-1901.) The cost of providing counsel for an indigent accused must fall within that category, for without such counsel, a prosecution would inevitably fail under the *Gideon* rule. (*State v. Rush,* 46 N. J. 399, 217 A. 2d 441.)

The question now, for our decision, is whether the reach of K. S. A. 62-1304 is sufficiently broad to encompass the allowance of compensation, from county funds, to counsel assigned to assist an indigent prisoner at the trial level in a proceeding brought under K. S. A. 60-1507. The trial court answered this question in the affirmative, and in this we believe the court was correct.

Although K. S. A. 60-1507 is included in our Civil Code, and the collateral attack upon a criminal judgment authorized therein may be denominated a civil proceeding, we believe that the collateral proceeding is, functionally, a part of the total review process, even though delayed, and should be treated as such in regard both to the right to counsel and to counsel's right to be paid.

The foregoing view finds sound support in *State v. Loray,* 46 N. J. 417, 217 A. 2d 450. The New Jersey statute provides that where counsel assigned to represent a defendant in a murder case has been allowed compensation, the sum fixed by the court shall be paid by the county treasurer. Pursuant to that statute, the trial court had granted an allowance to attorneys assigned to assist an indigent defendant in a post-conviction action designed to upset a murder conviction. The county treasurer appealed from the allowance.

In a short opinion the court held the post-conviction proceeding to be a part of the "murder case" within the meaning of the statute authorizing payment. In the course of its decision the court said:

". . . our post-conviction proceeding includes the former *habeas corpus* action which, for certain purposes at least, was considered a 'civil' rather than a criminal matter, *State v. LaFera,* 42 N. J. 97, 101 (1964). Nonetheless by a post-conviction claim a defendant seeks 'to undo his conviction' and 'to renew

the criminal controversy,' . . . We think, when the issue is whether compensation is to be paid, it would be artificial to say a post-conviction attack is no part of the murder case.'" (pp. 419-420.)

In *Smith v. Bennett*, 365 U. S. 708, 6 L. Ed. 2d 39, 81 S. Ct. 895, the issue was whether an Iowa statute requiring payment of a $4 filing fee before an application for a writ of habeas corpus could be docketed, deprived the petitioner, who was indigent, of the equal protection of the laws. The state insisted that the requirement was constitutionally permissible for the reason, among others, that habeas corpus is a civil action. In answering this contention the Supreme Court said:

"While habeas corpus may, of course, be found to be a civil action for procedural purposes, *Ex parte Tom Tong*, 108 U. S. 556 (1883), it does not follow that its availability in testing the State's right to detain an indigent prisoner may be subject to the payment of a filing fee. The State admits that each petitioner here is an indigent and that its requirement as to the $4 fee payment has effectively denied them the use of the writ. . . . In Iowa, the writ is a post-conviction remedy available to all prisoners who have $4. We shall not quibble as to whether in this context it be called a civil or criminal action for, as Selden has said, it is 'the highest remedy in law, for any man that is imprisoned.' 3 Howell's State Trials 95 (1628). The availability of a procedure to regain liberty lost through criminal process cannot be made contingent upon a choice of labels. . . ." (p. 712.)

We find the foregoing cases persuasive, although we do not intend to say that the post-conviction remedy contemplated by K. S. A. 60-1507 is a criminal action in every respect. Indeed, procedurally, we believe it is governed by civil rules. In a substantive aspect, however, and especially in respect to the appointment and compensation of counsel for an indigent prisoner at trial and appellate levels, we deem the proceeding a part of the criminal cause from which the proceeding arose.

Since K. S. A. 62-1304 provides that the county shall compensate trial counsel assigned to assist an indigent accused, we deem the court below was correct in ordering the defendant Board to allow Mr. Stahl's claim.

The judgment is affirmed.