**Eugene Douglas FEATHER, Petitioner,**

v.

**C. C. PEYTON, Superintendent, Virginia State Penitentiary, Respondent.**

Civ. A. No. 68-C-70.

United States District Court
W. D. Virginia,
Danville Division.

March 3, 1969.

Edward J. White, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

On the night of December 5, 1963, Eugene Douglas Feather, and three other men robbed a filling station proprietor in Pittsylvania County, Virginia, and in the process shot and killed the man. When they discovered that their getaway car had a flat tire, the men scattered in four different directions in the nearby woods. After spending the night

wandering through the woods, Feather was arrested by state policemen as he was walking along a road in neighboring Franklin County, Virginia. He confessed his guilt shortly after his arrest, and on May 26 and 27, 1964, after pleading not guilty, a jury found him guilty of aiding and abetting murder and sentenced him to life imprisonment. Final judgment was entered June 29, 1964. At a subsequent trial without a jury he pleaded guilty to the charge of armed robbery and received a second life sentence. Neither conviction was appealed.

Convinced that justice was not done, Feather sought habeas corpus relief in the state courts. After a full hearing the state court denied his petition. He exhausted his state remedies and he now petitions for habeas corpus in this court.

The petitioner offers several reasons why he might be entitled to relief, the first being that his confession was involuntary, the others concerning his right to the effective assistance of counsel.

At the hearing in the state court, Feather gave the following account of the circumstances surrounding his confession. Exhausted and hungry after spending the night following the robbery and murder wandering through the woods, and realizing that his capture was inevitable, the petitioner permitted his arrest at about 3:30 p. m. on December 6, 1963. The arresting officers questioned the petitioner briefly, but the petitioner denied any knowledge of the crimes. From the point of his arrest the petitioner was driven a few miles to a point about one-half mile inside Pittsylvania County, where he was turned over to the custody of two state police officers who were to drive the petitioner to the sheriff's office in Chatham, Virginia, approximately thirty miles away. After the petitioner was placed in the back seat of the police car, but before the ride had begun, one of the officers, Sergeant Barnes, told the petitioner that he was under arrest for armed robbery and murder, and that he, the officer, would "have to ask a few questions."

This proved to be a propitious choice of words, since according to the petitioner he thereupon assumed that he would "have to" answer the questions. But nevertheless, the petitioner at first disclaimed any knowledge of the crimes, and the ride to the sheriff's office commenced. Sergeant Barnes then warned the petitioner that if he continued to play dumb, he would end up in the electric chair. When this approach failed to elicit the desired response, Sergeant Barnes asked the petitioner if he believed in God. Upon getting an affirmative answer, Sergeant Barnes told the petitioner that he had better confess, since, "You have got to get right with God." This line of persuasion continued for not more than ten minutes or fifteen minutes, since the petitioner broke down and admitted his guilt as the police car passed by the scene of the crime, which happened to be on the route to Chatham, Virginia, no more than eight miles from the point where the ride began. Soon after arriving at the sheriff's office the petitioner had dictated and signed a written confession which was later used to convict him. The petitioner claims that at no time prior to his confession was he advised of his constitutional rights.

Assuming for the moment the truth of the petitioner's testimony, we would still have serious doubts about whether his confession was the product of a will overborne or was obtained in an atmosphere of substantial coercion and inducement. Compare, Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Lynumn v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963); Spano v. New York, 360 U.S. 315, 79 S. Ct. 1202, 3 L.Ed.2d 1265 (1959). Although we do not intend to condone the strategy allegedly employed by Sergeant Barnes, it is difficult to believe that only ten minutes of such tactics could elicit a confession from a suspect who was predisposed to remain silent. However, it is not necessary to rely solely on the testimony of the petitioner in resolving this question.

At the petitioner's trial on the murder charge a hearing was held in the judge's chambers to determine the voluntariness and admissibility of the confession. At this hearing Sergeant Barnes gave in some detail his account of the occurrences leading to the confession. He recalled that immediately after he had taken custody of the petitioner in the police car, the petitioner was advised that he was under arrest for armed robbery and murder, that he would "have to" be asked a few questions, that he did not have to answer any questions, and that anything the petitioner said could be used against him. Then, according to Sergeant Barnes, the following conversation ensued.

> Petitioner: What happened?
>
> Sergeant Barnes: I expect you know more about it than I do.
>
> Petitioner: I want to know what took place.
>
> Sergeant Barnes: You and several of your buddies went to Mr. Barber's home last night which is across from the store and when he came home from the store you-all shot and killed and robbed this man.
>
> Petitioner: Killed this man?
>
> Sergeant Barnes: Yes, sir, he is dead.
>
> Petitioner: I shot that man. I shot him with a twelve gauge shot gun with bird shot number 7½ size of shot. I panicked when he started hollering and I shot him.

Sergeant Barnes stated that this conversation took place before the ride to the sheriff's office had begun, that during the ride the petitioner was fully cooperative and willing to tell everything except the names of his confederates, and that at this time the petitioner appeared to be alert and not physically exhausted. Upon arriving at the sheriff's office the petitioner was advised that he was entitled to counsel, but the petitioner stated that he did not want counsel. The petitioner voluntarily dictated a confession to Sergeant Barnes between 5:00 and 6:30 p. m.

This testimony of Sergeant Barnes was not discredited by cross-examination nor was it contradicted by the petitioner. The petitioner did not testify at the trial court hearing, a fact that lends credence to the testimony of Sergeant Barnes. The petitioner admits that he discussed in detail the circumstances of his confession with his two court-appointed attorneys, yet in their cross-examination of Sergeant Barnes no mention was made of the veiled threats which, the petitioner claims, induced his confession. The thrust of defense counsel's argument that the confession was inadmissible was that at the time the petitioner did not have counsel, was unaware of his rights, and was intimidated by the presence of numerous policemen at the time of his confession. In view of the vigorous defense waged on behalf of the petitioner by his counsel, as clearly shown by the record, it is reasonable to assume, as we do, that the petitioner would have testified at this hearing in the trial court if his counsel had believed that his testimony would have contradicted that of Sergeant Barnes. The testimony of the petitioner's two attorneys at the state habeas corpus hearing reveals that the petitioner's failure to testify before the trial court judge was not due to misinformation, misapprehension of the applicable law, nor was it an oversight. Although the attorneys could not recall the exact details, they were sure that they discussed thoroughly with the petitioner the circumstances surrounding his confession and the question of whether or not the petitioner should testify as to these circumstances, and concluded that it would not be advantageous for the petitioner to testify.

■ The testimony of Sergeant Barnes and the two attorneys who defended the petitioner at his trial convinced the judge at the state habeas corpus hearing that the petitioner's allegations were "inherently incredible." We agree that the petitioner's testimony, contradicted by other evidence in the record, fails to sustain his allegation

that the confession was involuntary. In reaching this conclusion we have considered the fact that the petitioner was not properly advised of his right to counsel. But prior to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), a decision not here relevant, Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the absence of such advice was a circumstance supporting but not requiring the invalidation of a confession. Haynes v. Washington, 373 U.S. 503, 516–517, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). Under the circumstances of the present case, this fact does not require a finding that the confession was involuntary.

■ The petitioner next claims that his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments was abridged in several respects. First, he argues that counsel should have been appointed at the preliminary hearing held on December 24, 1963, where he pleaded guilty to charges of murder and armed robbery. The answer to this argument is that the preliminary hearing in Virginia is not a critical stage of criminal proceedings. Rambo v. Peyton, 380 F.2d 363 (4th Cir. 1967); Vess v. Peyton, 352 F.2d 325 (4th Cir. 1965), cert. denied, 383 U.S. 953, 86 S.Ct. 1215, 16 L.Ed.2d 214 (1966); Via v. Peyton, 208 Va. 387, 158 S.E.2d 127 (1967). The petitioner does not suggest any reason why his lack of counsel at the preliminary hearing was prejudicial. No rights of the petitioner were forfeited at the preliminary hearing, nor did his plea of guilty at the hearing in any way contribute to his convictions. Hence, the petitioner's reliance on White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), and Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), is misplaced.

■ Second, the petitioner argues that his counsel did not adequately investigate the circumstances of the crime, and did not interview witnesses suggested by the petitioner. Petitioner's attorneys deny this, and the record itself shows that the petitioner's allegations are patently frivolous. The two attorneys were appointed on January 6, 1964, more than four months prior to the trial. Not only did they thoroughly investigate the facts and repeatedly consult with the petitioner, they made numerous pre-trial motions, including a motion for a change of venue, a motion to quash the indictment, a challenge to the array on the ground that the jury panel had been improperly drawn, and a motion for a mental examination of the petitioner. At the trial defense counsel cross-examined witnesses, made numerous objections, noted exceptions to adverse rulings of the judge, and argued the petitioner's cause. They also moved to set aside the verdict of the jury, and when this was overruled they obtained a presentencing report for the petitioner. Although the petitioner's attorneys decided not to put the petitioner's character into issue, this would appear to be a wise decision in view of the petitioner's seven previous convictions dating back to 1945. The overall performance of defense counsel was not only adequate, it was exemplary. The fact that the petitioner had no defense to the charges was not the fault of his counsel.

■ The petitioner's third reason for alleging that he had inadequate assistance of counsel might be called "hung counsel." It seems that after the prosecution had presented its evidence at the trial on the murder charge the petitioner's two attorneys could not agree on whether the petitioner should change his plea to guilty and receive judgment and sentence from the court, or whether the case should be permitted to go to the jury. Counsel moved for a mistrial on the ground that their opinions were irreconcilably divided, but the trial judge overruled the motion and suggested that they present both sides of the issue to the petitioner and let him decide. This suggestion was followed, and the dispute was resolved by the petitioner. He decided that the case should go to the jury, since a plea of guilty might hurt his chances of obtaining a new trial upon

appeal. The petitioner does not deny that both sides of the issue were fully explained to him, nor does he claim that he did not understand the consequences of either course of action. Rather, he claims that he was completely dependent upon his counsel for advice, and that he was incapable of making an intelligent decision as to trial strategy.

The fact that two experienced attorneys could not agree on the proper course of action indicates that either alternative would have been proper under the circumstances. Even with the aid of hindsight it is not possible to ascertain which course of action stood the best chance of success, since the jury sentenced the petitioner to life in prison on the murder conviction, and the trial judge later imposed a similar sentence after a plea of guilty to the charge of armed robbery. The advice of the two defense attorneys was certainly effective in the sense that it permitted the petitioner to make the decision competently, intelligently and voluntarily. The Federal Constitution requires no more than this.

Lastly, the petitioner insists that he was denied his right to appeal because his attorneys misled him into thinking that he could appeal his conviction for murder after two or three years had elapsed. The petitioner contends that he requested his attorneys to appeal his conviction, but his attorneys advised him against an immediate appeal for the reason that if he were granted a new trial he would run the risk of receiving the death penalty after another conviction. He was therefore advised that an appeal a few years later, when community ill-feeling had subsided, would increase his chances of obtaining a lighter sentence if again convicted.

■ In Virginia it is mandatory that an appeal be noted within sixty days of final judgment, and the appeal perfected within four months. See Avery v. County School Board, 192 Va. 329, 64 S. E.2d 767 (1951). Hence, if what the petitioner says is true, he would be entitled to habeas corpus relief on the grounds that he was denied his right to appeal due to ineffective assistance of counsel. See Puckett v. North Carolina, 343 F.2d 452 (4th Cir. 1965). His testimony is corroborated by that of three other witnesses. Both of the petitioner's attorneys testified at the habeas corpus hearing in the state court, and each flatly denied that he ever advised the petitioner or anyone else that an appeal could be taken two or three years after the petitioner's conviction. On the contrary, they stated that the petitioner was advised of the statutory limitation on appeals, that the petitioner initially requested an appeal, and that they had made preparations to appeal the case. This latter assertion is substantiated by the record, which contains a notice of appeal and assignments of error filed with the clerk of the trial court on August 24, 1964, five days before the expiration of the sixty-day limitation. The attorneys explained that the appeal was not perfected because the petitioner decided in October, 1964, that he did not wish to appeal the murder conviction. This decision of the petitioner was made after the attorneys advised him that his chances of obtaining a new trial were not good, that if a new trial were granted a second conviction was virtually inevitable, and that there was a distinct possibility of a jury imposing the death penalty upon a second conviction.[1] The attorneys testified that although the petitioner relied on their considered opinion, the decision not to appeal was made by the petitioner. Their testimony is supported by an affidavit signed by the petitioner which states that the petitioner

---

1. Not until 1967 did the Court of Appeals for the Fourth Circuit hold that it was unconstitutional to sentence a defendant to a longer term of imprisonment at his second trial than he received after his first conviction. Patton v. State of North Carolina, 381 F.2d 636 (4th Cir. 1967), cert. denied, 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871 (1968).

\* \* \* has authorized his attorneys to appeal the decision of the Circuit Court of Pittsylvania County which sentenced him to life imprisonment on the charge of aiding and abetting in the murder of William David Barber, and that he understands that steps have been taken to perfect his appeal, that he does not desire to continue with said appeal, and after consultation with his counsel does therefore authorize and direct his attorneys to suspend and cease to perfect his said appeal forthwith.

This affidavit is dated October 20, 1964, nine days prior to the expiration to the time for perfecting appeals.

In his amended petition for habeas corpus filed in the state court the petitioner alleged that he signed this affidavit and abandoned his appeal after being advised by his attorneys that he had nothing to gain from an appeal and that he would most likely receive a death penalty if again convicted. Somewhat inconsistently, he testified at the state hearing that he signed the affidavit without reading it and that he was under the impression that the affidavit meant only that an appeal would not be taken at that time, but would be taken in a few years. He now believes that his attorneys had him sign the affidavit solely because they did not want to spend the time and effort necessary to perfect his appeal.

▮▮ The testimony of the petitioner and that of the two attorneys is in irreconcilable conflict. Relying on the unequivocal denials of the attorneys and the petitioner's affidavit, the judge at the state habeas corpus hearing chose to believe the attorneys. Although we are not bound by this determination of the state court, our review of the entire record has disclosed no reason to prefer the testimony of the petitioner over that of his two attorneys. As did the state court, we find it hard to believe that two attorneys who so ably and vigorously defended the petitioner, and who took steps to appeal his conviction, would intentionally mislead the petitioner into believing that his conviction would be appealed after the elapse of two or three years. The burden of proof rests upon the petitioner to establish that he did not competently and intelligently waive his constitutional right to appeal his conviction. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Although the testimony of the petitioner's half brother and step father supports the petitioner's allegations, their testimony is based on conversations with the attorneys which allegedly took place either before or shortly after the petitioner's conviction. Yet, the fact remains that during the two month period following the conviction the attorneys prepared and filed notice of appeal and assignments of error, actions which are clearly inconsistent with any such erroneous advice. The third witness to corroborate the petitioner's story was one of his co-defendants. His testimony is based on conversations with the petitioner which occurred in prison apparently two years after their conviction, and for that reason his testimony is no more reliable than that of the petitioner. We think the record requires a finding that the petitioner was never advised by his attorneys that an appeal could or would be taken two or three years after his conviction.

▮ Nor are we persuaded that counsel's advice not to appeal was given in bad faith. In view of the law as it stood at that time, the advice of the attorneys cannot be faulted. Certainly, as the petitioner contends, an indigent defendant who requests an appeal is entitled to free transcripts of the record and assistance of counsel in preparing his appeal. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). It is also true that a defendant's request for an appeal, where not wholly frivolous, may not be refused by court or counsel in the belief that an appeal would be of no avail. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); Lane v. Brown, 372 U.S. 477,

83 S.Ct. 768, 9 L.Ed.2d 892 (1963); Eskridge v. Washington State Board, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958); Magee v. Peyton, 343 F. 2d 433 (4th Cir. 1965); Cabaniss v. Cunningham, 206 Va. 330, 143 S.E.2d 911 (1965). But these cases do not fit the present facts as we find them, since the petitioner competently and voluntarily waived his right to appeal. His decision not to appeal was based on the best advice which his attorneys could provide, and although the petitioner had the right to disregard this advice and request an appeal, he had no right to expect or receive more than good advice from his counsel.

Since the petitioner has failed to substantiate his allegations, his petition for the writ of habeas corpus is hereby dismissed and the writ denied.

The clerk of this court is directed to send a certified copy of this opinion and judgment to the petitioner and to the respondent.