Frank JONES, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Court of Appeals of Kentucky.

May 4, 1979.

Rehearing Denied Sept. 21, 1979.

Discretionary Review March 4, 1980.

Jack Emory Farley, Public Advocate, Larry H. Marshall, Asst. Public Advocate, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., J. Gerald Henry, Asst. Atty. Gen., Frankfort, for appellee.

Before COOPER, LESTER and WIL-HOIT, JJ.

LESTER, Judge.

On September 27, 1976, Jones was convicted of the offense of murder and sentenced to the minimum penalty of twenty years imprisonment. No appeal was taken. Based upon knowledge gained from an "inmate lawyer", appellant filed his RCr 11.42 motion on March 2, 1978, and the following month he was granted a hearing in the Clay Circuit Court. Jones testified that he was advised by the court of his right to appeal and his right to counsel for that appeal at the conclusion of the trial. He further stated that upon the rendering of the verdict, and again upon sentencing, he requested his private counsel to file an appeal and on the latter occasion, his lawyer said, ". . . go on down there and do 12 months and he would guarantee me back home in 13."

John Lyttle, attorney for Jones at the time of the trial, relates a somewhat different story. At the hearing upon the motion, counsel testified:

Q. 4 Would you please take up and explain to the Court in your own words just what transpired with emphasis on his right to appeal and whether or not you wer (sic) requested by him to file an appeal?

A. On the day he was convicted in the afternoon and we came back into the jury room and he kind of laughed when he was telling his wife he got twenty years and I said now don't laugh where anybody can hear you. I am disappointed in the verdict, but if there is any error in the verdict to reverse it, I don't really know what it is. Now you have a right to appeal if you want to and if you want to appeal I will appeal it and he said "No, I don't want to appeal; . I have already been out too much money now." That was all that was said at that time and then I waited until the day the Court pronounced sentence on him and I took it up with him again and told him then I felt like the verdict was severe, which I did, and that he had a right to appeal and if he couldn't afford a lawyer the Court would appoint him one. Practically what the Court told him, but in the meantime he would have to stay in jail; there wasn't any bond provided for him to get out of jail and he said I am just going on.

He said I would like for you to fix an order where my wife can endorse my black lung checks and I prepared that for him and sent it to the jail by his wife and I did tell him that if I could at a later date help him I would be glad to do anything I could like preparing papers for his release on parole; but I never told him nor anyone else I could get them out of the penitentiary.

And later on:

Q. 6 Based upon your contact with him and your interviews with him in preparing his defense, is it your opinion that he reqlized (sic) the significance of it and knew what he was doing at the time he told you he would just go on?

A. I don't have any doubt but what he knew it.

The trial court believed the evidence for the Commonwealth and concluded that appellant had intelligently waived his right to appeal.

■ The appellee urges that this court lacks jurisdiction to entertain this appeal because the sentence herein was twenty years, and pursuant to Section § 110(2)(b) of the Constitution of Kentucky the motion for a belated appeal can be granted only by the the appellate court that is to hear that appeal. *Cleaver v. Commonwealth*, Ky., 569 S.W.2d 166, 169 (1978), is cited as support for that position, but, unlike the case at bar, there had been one dismissal of an appeal in the Supreme Court followed by an RCr 11.42 motion in the circuit court for a late appeal alleging ineffective assistance of counsel. The motion was granted, the appeal perfected and again, dismissed. In so doing, the *Cleaver* court said:

A right to a belated appeal, or to reinstate a lapsed appeal, can be granted only by the appellate court that is to entertain it.

The foregoing language has misled appellee to the belief that since the sentence vests appellate jurisdiction in the Supreme Court that all facets of the litigation must by-pass this court. That contention completely overlooks the clear mandate of *Williams v. Venters*, Ky., 550 S.W.2d 547, 548 (1977), to the effect:

Section 110(2)(b) of the Kentucky Constitution as amended effective January 1, 1976, provides that an appeal from a judgment of the circuit court "imposing a sentence of death or life imprisonment or imprisonment for twenty years or more shall be taken directly to the Supreme Court." A judgment or order denying a post-conviction motion, however, is not a judgment "imposing a sentence." Hence an appeal from it is addressable to the Court of Appeals.

In other words, *Cleaver* stands for the proposition that once the appellate court has denied the appeal the trial court cannot reinstate it. *Gregory v. Commonwealth*, Ky., 574 S.W.2d 308 (1978). *Cleaver* does not support the argument that RCr 11.42 motions following Section 110(2)(b) types of cases must be addressed to the court of last resort. *Williams, supra.* This court follows the procedure of *Williams, supra*, and *Lomax v. Commonwealth*, Ky.App., 581 S.W.2d 27 (1979).

In responding to the jurisdictional issue, appellant cites an unpublished opinion of this court in his reply brief, and we again assert that this is an improper practice and could result, upon proper motion, in the striking of the offending brief without leave to refile. *Yocom v. Justice*, Ky.App., 569 S.W.2d 678 (1977); CR 76.28(4)(c).

We now turn to the main thrust of this litigation which revolves around the status of motions for belated appeals brought under RCr 11.42 in light of the recent decision in *Cleaver, supra.* Appellee contends that the import of the opinion is that relief under the rule is limited to its terms in that the movant is entitled only to have the judgment vacated or to a new trial and that a late appeal is not a proper remedy. Moreover, the Commonwealth argues that Jones knowingly and intelligently waived his right to an appeal. On the other hand, appellant does not view *Cleaver* as raising a jurisdictional bar to his motion because no appellate court has dismissed his appeal. Thus, we perceive two questions for our determination, namely, whether Jones may obtain a belated appeal via an RCr 11.42 motion, and, if so, whether he has waived his right to that appeal.

The decisions dealing with delayed appeals suggest that they may be placed in two categories, the first of which is the "waiver" cases. These are cases where no appeal has been attempted or where an imperfected appeal has not been dismissed. The issue in this type of litigation, when the accused seeks a late appeal, is whether by his inaction he has knowingly and intelligently waived his right to an appeal. The leading "waiver" opinion is *Hammershoy v. Commonwealth*, Ky., 398 S.W.2d 883 (1966).

The second classification may be denominated as the "dismissal" cases wherein an appeal has been attempted but has been dismissed by an appellate court without consideration of the merits. When the defendant later seeks to reinstate his appeal the question usually presented is whether he was denied the right of appeal because of the ineffective assistance of counsel on the earlier aborted appeal. *Cleaver* falls into this category.

*Hammershoy* provided a procedure whereby a defendant who had never taken an appeal could obtain a review belatedly. The appellant in that litigation had been convicted of armed robbery and sentenced to twenty years imprisonment. Defense counsel filed notice of appeal but advised his client that he would no longer represent him, so Hammershoy, acting pro se, requested the court to designate an attorney to prosecute his appeal. There was no order entered upon the motion and no further steps taken. The accused then moved for relief under RCr 11.42 alleging that he had been denied an appeal, which was overruled by the circuit court without hearing because Hammershoy had been represented after trial by two appointed attorneys for the purpose of an appeal, if they considered it feasible. The Supreme Court held that an indigent who demanded and was denied an appeal because his lawyers determined that the appeal lacked merit was entitled either to a vacation of his conviction or to a late appeal and in so doing said:

> It was remarked in *McIntosh v. Commonwealth*, Ky., 368 S.W.2d 331, 335 (1963), that an attack on the trial judgment is not the appropriate remedy for a frustrated right of appeal. However, *Lane v. Brown, supra* [372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892], indicates that it is, subject to the condition that such relief may be denied if within a reasonable time the state provides the movant an appeal on the merits, including assistance of counsel.

*Hammershoy* is a waiver case in the sense that the appellate court determined that

the defendant had asked for and had been denied an appeal. It is significant that the court clearly stated that an attack on the judgment pursuant to RCr 11.42 is an appropriate remedy for a frustrated right of appeal. *Cleaver*, which will be discussed infra, did not cite *Hammershoy*, leading to the conclusion that it is still law. Another case supporting the RCr 11.42 procedure for seeking a delayed appeal is *Tipton v. Commonwealth*, Ky., 456 S.W.2d 681, 682 (1970). See also *Prater v. Commonwealth*, Ky., 476 S.W.2d 833 (1972), and *Stinnett v. Commonwealth*, Ky., 446 S.W.2d 292 (1969).

The facts of *Cleaver*, the "dismissal" case, are important. The appellant was convicted of murder and robbery in 1976, and given respective sentences of life and twenty years. His appointed counsel attempted an appeal, but after several extensions, the Supreme Court dismissed the appeal without considering the merits. Thereupon, defendant moved the circuit court, via RCr 11.42, for a delayed appeal alleging ineffective assistance of counsel on appeal as grounds; the trial court agreed with the contention and the second appeal was perfected. Again, the Supreme Court dismissed without reviewing the merits because "a right to a belated appeal, or to reinstate a lapsed appeal, can be granted only by the appellate court that is to entertain it." This language limits the granting or denial of a belated appeal to an appellate court in a *dismissal* type of case.

■ We conclude that after *Cleaver* the proper procedure to obtain a delayed appeal, when an appellate court has dismissed a prior appeal, is to file a motion in the proper appellate court, since a RCr 11.42 procedure in the circuit court would be improper in that situation. If findings of fact appear necessary, the matter may be remanded to the trial court. Where no appeal has been dismissed a motion for a late appeal under the last cited rule is still available under *Hammershoy*. In the case at bar, appellant is in a *Hammershoy* situation and therefore, properly moved in the court below for a late appeal. As no prior appeal has been dismissed, this court could grant Jones a new appeal by reversing the denial of the motion made under RCr 11.42.

■ There remains for our consideration whether the accused knowingly and intelligently waived the right to an appeal by his actions. We observe from the evidence adduced before the Clay Circuit Court (a total of fourteen pages), some of which has been quoted above, that the testimony for the appellee presents greater detail of what occurred at the conclusion of the trial. Jones admits the court advised him of the right to appeal and that counsel would be provided for that purpose, and he further said he thought that his lawyer would take care of it. When searching for an answer as to why no appeal was in fact prosecuted, we find it in the testimony of his trial lawyer, who related that appellant had already spent enough in his defense and that he had decided to terminate the legal steps at this point. Most appellants in criminal cases take the position that they, and only they, are to be believed without question, but judges and juries are free to accept as true the evidence of either party, and in this case, the circuit judge determined that Jones knowingly and intelligently waived his right to an appeal and we find nothing in the record to persuade us to the contrary.

The judgment is affirmed.

All concur.