Willie **FRAZIER**, Petitioner,

v.

**Ward LANE, Warden, Indiana State Prison, Respondent.**

**Civ. No. 3676.**

United States District Court
N. D. Indiana,
South Bend Division.

March 15, 1968.

Nathan Levy, Joseph T. Helling, and Thomas H. Singer, of Crumpacker, May, Levy & Searer, South Bend, Ind., for petitioner.

John J. Dillon, Atty. Gen. of the State of Indiana, appearing by Dennis J. Dewey, Deputy Atty. Gen., for respondent.

ORDER

GRANT, Chief Judge.

This case was initiated by the receipt of a petition for writ of habeas corpus on April 12, 1965. Essentially, it alleged that solely because of indigency, petitioner was being denied his right to the equal protection and due process of the law, as guaranteed by the Fourteenth Amendment to the Constitution of the United States, by virtue of the refusal of the

State of Indiana to provide him with transcripts of the proceedings of his original conviction and of subsequent post-conviction proceedings, and the State's further refusal to provide him with appointed counsel in order that he might adequately pursue those avenues of post-conviction relief open under Indiana law. The petition was denied, as were subsequent requests both to this Court and to the Court of Appeals for the Seventh Circuit for a certificate of probable cause. Frazier thereupon petitioned the United States Supreme Court for a writ of certiorari. It was granted, 387 U.S. 242, 87 S.Ct. 1708, 18 L.Ed.2d 746, the judgment of the Court of Appeals was reversed, and the case was remanded for further consideration in light of Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966), *per curiam.* The Court of Appeals thereupon reversed the decision of this Court denying the petition for writ of habeas corpus and remanded for further proceedings not inconsistent with its Order, Frazier v. Lane, Misc. No. 208 (7th Cir., May 26, 1967).

The facts involved are not in dispute. The petition shows that Frazier was convicted of second-degree murder on September 29, 1948, and sentenced to life imprisonment. An appeal was not then taken, nor was a motion for new trial filed. On or about April 11, 1949, and well after the ninety-day period for taking a direct appeal from the judgment of conviction had run, Frazier took the first of a long series of steps intended to secure postconviction relief by petitioning the trial court for a certified copy of the trial transcript. That petition was denied, as was a similar one filed with the Indiana Supreme Court. In 1955, Frazier filed a petition for writ of error coram nobis in the trial court alleging, *inter alia,* inadequacy of representation by his trial counsel. It was denied. Then, in 1964, and after various other attempts to secure relief in both the state and federal courts had been frustrated, Frazier requested the public defender to assist in representing him

before the Indiana Supreme Court pursuant to Rule 2–40A, Rules of the Supreme and Appellate Courts of Indiana (hereinafter cited as Rule 2–40A), on what amounted to an appeal from the denial in 1955 of the petition for writ of error coram nobis. The filing of the instant petition was occasioned by the refusal of the public defender to represent Frazier, and the refusal of the. Indiana Supreme Court to order such representation. The questions presented are whether the procedure provided by Rule 2–40A adequately secured this indigent petitioner's right to the assistance of counsel on the 1964–1965 postconviction proceedings before the public defender and the Indiana Supreme Court and whether he is entitled to transcripts of the relevant state court proceedings in order that he might now obtain adequate postconviction appellate review.

■ Part of the law to which we must look to answer those questions had become well settled at least as early as 1956, when it was established that the kind of appellate review a criminal defendant received could not constitutionally be determined by the amount of money he had, regardless of whether he was seeking direct or collateral (postconviction) review.

"It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all. See, *e. g., McKane v. Durston,* 153 U.S. 684, 687–688, 14 S.Ct. 913, 914–915, 38 L.Ed. 867. But that is not to say that a State that does grant appellate review can do so in a way that discriminates against some convicted defendants on account of their poverty." Griffin v. People of State of Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956).

Griffin left open the possibility of finding "(O)ther means of affording adequate and effective appellate review to indigent defendants" (at 20, 76 S.Ct. at 591).

Between 1956 and 1963, the relationship between adequate appellate review

and indigency was explored by the Supreme Court in a series of cases, in each of which the equal protection and due process rights[1] of indigent defendants were further defined.[2] Then, in 1963, the indigent's right to a trial transcript and to counsel under extant Indiana post-conviction procedure were subjected to review in Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892. In *Lane,* petitioner had filed a verified petition for writ of error coram nobis in the state trial court. Upon its denial, Brown, the petitioner, requested and was refused the services of the public defender in prosecuting an appeal therefrom. Petitioner next requested the trial court to appoint counsel and furnish a transcript of the record. This was refused. Finally, Brown requested that the Indiana Supreme Court mandate the trial court to appoint counsel and furnish a transcript for the purpose of prosecuting the desired appeal. This petition, too, was denied. Brown then filed a petition for writ of habeas corpus in this Court. We held that a procedure which allowed for an indigent's representation by the public defender (and, concomitantly, provided for the printing of a transcript at public expense) solely upon a discretionary finding that the petitioner's cause was "meritorious" denied such person the equal protection of the law. We said:

> "Indiana need not have provided the office of Public Defender to aid indigent petitioners, but having chosen to do so, Indiana cannot allow the Public Defender to pick and choose which indigents he will aid. This violates the Equal Protection Clause of the 14th Amendment to the Constitution of the United States in that it does not afford to all indigents the same right to legal aid. Griffin v. People of State of Illinois, supra, 351 U.S. at page 18, 76 S.Ct. at page 590; Smith v. Bennett, 1961, 365 U.S. 708, 713, 81 S.Ct. 895, 6 L.Ed.2d 39. That is, the discretion lodged in the Public Defender allows that officer to arbitrarily pre-judge the merits of a case of one indigent, and, upon finding the cause to be, in his opinion, without merit, decline to represent the indigent or furnish him with a transcript, while in another case, after finding the cause to be, in his opinion, meritorious, proceed to assist the indigent in obtaining a transcript and perfecting an appeal." United States *ex rel.* Brown v. Lane, 196 F. Supp. 484, 487 (N.D.Ind.1961).

That decision was affirmed by the Court of Appeals, 302 F.2d 537 (7th Cir. 1962), and in essence, by the Supreme Court, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 *supra,* which, while emphasizing the significance of the Indiana Supreme Court rule which required that a transcript of the lower court proceedings be filed in order that it might acquire jurisdiction to hear such an appeal, found controlling the principles announced earlier in *Griffin, Burns, Smith,* and *Eskridge.*

It was in response to *Lane* that Rules 2–40 and 2–40A were adopted in 1963 and, as stated, it was because of the failure of petitioner herein to obtain relief under the authority of Rule 2–40A that the instant petition was brought. Whether the procedure contemplated by Rule 2–40A, as applied to this petitioner, was adequate to protect his equal protection rights must be governed now not only by *Lane* and the two decisions

---

1. Mr. Justice Harlan's dissents in *Griffin* and in Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) help focus the relationship between equal protection and due process in this area. *See* Note, *Discriminations against the Poor and the Fourteenth Amendment,* 81 Harv.L. Rev. 435 (1967).

2. Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, L.Ed.2d 1060 (1958), *per curiam*; Eskridge v. Washington State Board of Prison Terms and Paroles, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958), *per curiam*; Burns v. State of Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed. 2d 1209 (1959); Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961); *cf.* Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

handed down concurrently by that Court,[3] but also by several apposite post-*Lane* decisions.[4]

Rule 2–40A provides, in pertinent part:

"*Review by certiorari.*—Rulings on petitions to file belated appeals, rulings on petitions to file belated motions for a new trial and rulings on belated motions for new trial (when because of the expiration of time it is impossible to incorporate the alleged errors in a regular appeal in the original criminal case), may be reviewed only on petition for a writ of certiorari in the Supreme Court of this state.

\* \* \* \* \* \*

It shall be the duty of the public defender of the state of Indiana to represent indigent persons who are inmates of penal institutions of the state of Indiana after their time for regular or timely appeal has expired, if requested so to do, in the filing of petitions for delayed appeals, petitions for belated motions for a new trial, and petitions for writs of certiorari if he, after diligent inquiry, finds any grounds upon which to sustain such proceedings. In the event of the failure or refusal of the public defender to represent any petitioner in such cases (as provided in Rule 2–40), upon petition filed in the clerk's office of the Supreme Court setting up such facts that the public defender has failed or refused to represent them, a citation shall be issued to the public defender by this court to show cause why he does not represent the petitioner, and he shall file his response and report with the clerk of this court, which shall become a part of the record in this cause. Upon due consideration of said response and report, the court shall determine whether or not an order shall issue requiring the public defender to represent the petitioner.

\* \* \* \* \* \*

The court may grant the writ if it finds meritorious grounds for a review of the trial court's action exist, and make such order, final or otherwise, as may be appropriate."

This Rule, along with Rule 2–40, supplanted the formerly-existing writ of error coram nobis. Snow v. State, 245 Ind. 423, 195 N.E.2d 468, 199 N.E.2d 469 (1964).

Once again, Indiana courts have required that there be a prima facie showing of merit in the appeal sought before it may be prosecuted by the public defender on behalf of an indigent defendant under the applicable provisions of Rule 2–40A. *See, e. g.,* Victor v. State, Ind., 214 N.E.2d 645 (1966), *cert. den.* 385 U.S. 885, 87 S.Ct. 178, 17 L.Ed.2d 112 (1966). Thus, the only difference between the post-*Lane* and pre-*Lane* procedure with respect to an indigent's representation by counsel is the provision of Rule 2–40A allowing Supreme Court review of the public defender's declination to represent such a person. And, although by the terms of the Rule a transcript is no longer a jurisdictional requisite for such review, the requirement of "merit" continues to exist for any petitioner desiring a transcript. *See, e. g.,* Weaver v. State, 244 Ind. 314, 192 N.E.2d 634 (1963).

In *Lane*, this Court suggested that a screening procedure by which an indigent

---

3. Douglas v. People of State of California, *supra* note 1 (right to counsel); Draper v. State of Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963) (right to transcript).

4. White v. Lane, 321 F.2d 298 (7th Cir. 1963), *cert. den.* 375 U.S. 953, 84 S.Ct. 445, 11 L.Ed.2d 314 (1963) (right to counsel); Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964) (right to transcript); Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966), *per curiam* (right to transcript); Cruz v. Patterson, 253 F.Supp. 805 (D.Colo. 1966), *aff'd*, 363 F.2d 879 (10th Cir. 1966), *per curiam, cert. den.* 385 U.S. 975, 87 S.Ct. 504, 17 L.Ed.2d 438 (1966) (right to counsel); Entsminger v. State of Iowa, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967) (right to counsel and transcript); Anders v. State of California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) (right to counsel).

defendant had to make a preliminary showing of merit before he could secure either counsel or a transcript violated that person's right to the equal protection of the law, once it was shown that the non-indigent had full access to the appellate processes without having to make such a showing. Under the present Rule 2–40A, it will be seen that the non-indigent may petition the Supreme Court directly for a writ of certiorari upon the denial of a petition to file belated appeal, petition to file belated motion for new trial, or the denial of a belated motion for a new trial. This person thus circumvents the office of the public defender and, equipped with counsel and transcript, is afforded the opportunity of arguing before the Indiana Supreme Court the merits of a petition for writ of certiorari rather than the merits of counsel's decision not to represent him. In addition to *Lane,* screening procedures similar to the one just described have been struck down in *Eskridge* v. *Washington* State Board of Prison Terms and Paroles, *supra* n. 2, *Draper* v. State of *Washington, supra* n. 3, and in *Cruz* v. *Patterson, supra* n. 4, the case most analogous to the instant one and one which was cited with approval in the Court of Appeals opinion rendered in the instant case. The reason for this kind of result is probably best expressed in *Douglas* v. People of State of *California, supra* n. 1, a case which scrutinized a California procedure requiring a preliminary finding of merit by the District Court of Appeals before counsel could be appointed.

> "The present case, where counsel was denied petitioners on appeal, shows that the discrimination is not between 'possibly good and obviously bad cases,' but between cases where the rich man can require the court to listen to argument of counsel before deciding on the merits, but a poor man cannot. There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshaling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself. The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal." (372 U.S. at 357–358, 83 S. Ct. at 817).

Although *Douglas* again indicated that a state might provide for differences in treatment between the indigent and non-indigent on matters involving discretionary review, as long as a denial of due process or invidious discrimination did not result, the quoted language strongly suggests that any discriminatory screening procedure requiring a preliminary showing of merit before a collateral appeal may be enjoyed, short of that procedure suggested in *Anders* v. *State of California, supra* n. 4, is constitutionally deficient.

If there is any doubt as to the manner in which the procedure contemplated by Rule 2–40A is in actuality followed, it is dispelled by the record in the instant case. In 1964 Frazier requested the assistance of the public defender in prosecuting a postconviction appeal. That request was denied by the public defender in a letter to Frazier dated January 18, 1965. It is replete with references to the fact that Frazier's desired appeal has "no merit." In speaking of Frazier's known desire to petition a federal court for writ of habeas corpus, the defender states:

> "It appears that a federal court has taken the position that in every conviction in a state court it is presumed error exists. This is contrary to all of the well-established principles of law and procedure existing and has existed for hundreds of years. The law is well settled that error is never presumed and that the presumption is that the court or jury trying a case did not commit any error or errors and it is only when a defendant can set up, and establish, that error did exist prejudicial to his substantial rights, both state and federal, that a court may pre-

sume error. It is my considered opinion that said section (Title 28, Sec. 2254) has been improperly interpreted by the courts."

The letter goes on to state that the public defender would be precluded from taking Frazier's case by the full faith and credit clause of the Constitution of the United States since his contentions had already been adjudicated in a habeas corpus proceeding in a federal court. That this is obviously not the case is shown by the long line of cases cited in Fay v. Noia, 372 U.S. 391, 422–424, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Such a response on the part of the public defender indicates a lack of representation of this petitioner at least as opprobrious as that condemned in *Anders*, in which the roles of active advocate and *amicus curiae* were compared. Worse than the "no merit" letter, this statement of reliance upon a presumption that there was no error, this expression of personal disapproval of a series of cases which have attempted to protect persons in situations such as the present one, and this misinterpretation of the nature of *res adjudicata* in habeas corpus proceedings comes close to casting the public defender in the role of antagonist rather than advocate.

■ Any kind of screening procedure by which an indigent defendant such as petitioner herein must first run the gauntlet of a preliminary showing of merit before a person who, at best, stands in the position of *amicus curiae*, clearly does not come up to the standard demanded by the equal protection clause. The deficiency is not solved by allowing the Indiana Supreme Court to review the response and report of a public defender who has refused representation of an indigent defendant for the reason that there simply has been no representation by one acting as an active advocate.

■ Further, in order that this petitioner might proceed with whatever post-conviction remedies under Rules 2–40 and 2–40A are now appropriate, it is obvious that he will need a certified transcript of the record of trial proceedings, at least for the purpose of presenting for review the issue of incompetency of trial counsel. Petitioner is entitled to this, *Griffin* v. *People of State of Illinois*, as well as to certified records of those proceedings involving the petition for writ of error coram nobis filed in 1955 and the petitions for relief pursuant to Rules 2–40 and 2–40A filed in 1964 and 1965, *Long* v. *District Court of Iowa, supra* n. 4.

■ In conclusion, we might say that an altogether different case might have been presented were the public defender in the first instance vested with authority to act *as an advocate* on an indigent petitioner's behalf, rather than having to examine the record from the outside in order to ascertain whether or not the indigent petitioner, acting *pro se*, has established the necessary showing of prima facie merit. If, after carefully examining the records, researching the law, and marshaling any possible evidence in favor of the petitioner, it were found that no case whatever could be made, that fact could then be presented to the Indiana Supreme Court under the procedure outlined in *Anders*.[5] In other words, we see no inherent difference between the role of a public defender and any other court-appointed attorney, other than that which has been imposed by Rule 2–40A and apparently assumed by some of the defenders in this state. A modification of the Rule might well result in the disappear-

5. "The role of advocacy in no way intends that counsel, ' * * * contend that errors of law occurred when he does not believe they did * * * (thus) pervert(ing) the solemn oath which he takes never to attempt to mislead the court.' Stanmore v. People [157 Colo. 207] 401 P.2d 829, 830 (Colo.1965). It only demands that counsel devote his sole attention and energies to asserting his client's cause, leaving to his adversary the corresponding obligation, inherent in the Anglo-American adversary system of Jurisprudence, of asserting the cause of the opposition." *Cruz v. Patterson, supra* n. 4, 253 F.Supp. at 809.

ance of that kind of unconstitutional discrimination found to exist in this case.

It is, therefore, ordered that the petition for writ of habeas corpus filed herein on April 12, 1965, be, and the same is, hereby, granted.

It is further ordered that petitioner shall be granted appellate review of the 1955 denial of his petition for writ of error coram nobis, with the aid of counsel and such transcripts as he is herein shown to be entitled to, within 180 days from the date of this Order, failing which he shall be discharged and released from custody by the respondent.

It is further ordered that in the event an appeal from this decision is taken, such time limitation herein imposed shall be suspended and shall begin to run only upon further Order of this Court. During the pendency of such appeal, if any, petitioner will continue to be detained in the custody of respondent.

The Court wishes to express its thanks to Nathan Levy, Joseph T. Helling, and Thomas H. Singer, for their diligent efforts in representing the rights of petitioner.